## THE AMERICAN EXCHANGE BANK *vs.* FRANCIS H. INLOES, Garnishee of TURNBULL & Co.

Proceedings in a court of equity, under a deed of trust not assailing the deed, but assuming its validity, and asking the aid of equity to carry out and enforce its trusts, do not oust the jurisdiction of a court of law, to set the deed aside.

The party assailing the deed at law, not having been a party to the proceedings in equity, would not be bound by them, even if they had contemplated the same object as the suit at law.

Where a prayer assigns a number of distinct reasons why a deed of trust is void, each of these reasons is to be treated as a distinct and separate prayer, and if any one presents a valid objection to the deed, it is error to reject it.

Preferences in a deed of trust, securing one creditor to the exclusion of others, are only *permitted* by a court of equity, and when such preferences are followed by other provisions equally suspicious in their character, the court will have little difficulty in discovering such a fraudulent design on the part of the grantor, as to vacate the deed.

A power to the trustee, in an assignment in favor of creditors, to sell the property "*gradually,* in the manner and on the terms in which, in the course of their business, the grantors had sold and disposed of their merchandise," renders the deed void as to creditors.

Where a deed appears to be void upon its face, it is the duty of the court so to pronounce it, and there is nothing, in such case, to be left for the jury to find.

APPEAL from the Superior Court of Baltimore city.

*Attachment on judgment* sued out by the appellant, to affect the property and credits of Turnbull & Co., and laid in the hands of the appellee as garnishee, who appeared and pleaded *nulla bona.*

*Exception.* The judgment on which the attachment issued, was for $30,000, recovered on the 10th of May 1852, and it was admitted, that the garnishee, at the time of attachment laid and plea pleaded, had and continues to have in his hands, upwards of $37,000, the proceeds of sales and collections of claims as trustee under a deed of trust from Turnbull & Co., dated the 22nd of September 1851, conveying to him all their stock of goods in their store in Baltimore, (their business being the carpet and oil-cloth business, both by wholesale and

retail, but mostly by retail,) and all notes and evidences of debt, *in trust*, to sell the goods and collect the claims in the manner thereinafter mentioned, with power "to arbitrate and compound at his discretion as that might appear most expedient for the advantage of those concerned in these trusts." And to apply the proceeds—1st, to pay the expenses of the trust, including a reasonable commission to the trustee. 2nd. to pay two notes due by the firm, particularly described, and then to apply the residue to pay in full, or ratably and proportionably, so far as it extends, certain scheduled claims, and after that, to apply the surplus, if any, to pay all other claims against the firm, ratably and proportionably. The deed then contains the provisions set out in the opinion of this court.

The garnishee then proved, that the trustee filed his bond under the act of 1845, ch. 166, which was duly recorded, and then offered in evidence certain proceedings on the equity side of Baltimore county court, showing that on the 4th of November 1851, the owners of the two notes mentioned in the *first* trust, filed their bill, setting forth the deed, and praying that these notes might be paid out of the proceeds of the trust property in the hands of the trustee, who answered the bill admitting the facts, and submitting himself to such decree as the court might pass. The court, on the same day, passed an order that these notes should be paid out of the fund, which was done, and the case entered "*satisfied.*" On the 17th of March 1852, the trustee filed a petition, stating that he desired to distribute the fund under direction of the court, and asking for an order giving notice to all the creditors to file their claims, and such order was passed, and afterwards, upon petition of the trustee, the time of filing claims was extended to the 15th of July 1852. He further proved, that the whole of the goods sold amounted to $40,265.79, of which only $190 remained unpaid. The plaintiff then offered two prayers:

1st. That the said deed of trust is void on the following grounds: 1st, because it authorises the trustee to arbitrate and compound at his discretion, as may appear most for the advantage of those concerned in the trusts. 2nd, because it

authorises him to dispose of the property gradually, and in the manner and on the terms in which, in the course of their business, Turnbull & Co. had, before the deed, sold and disposed of their merchandise. 3rd, because it authorises the trustee to sell the property by retail or in parcels, as might by him be deemed eligible. 4th, because, by the terms of the deed, the trustee is not to be liable for any violation of the trust, or any omission or neglect, save only for personal and actual, and wilful wrong or default.

The second prayer need not be stated, as no decision was made upon it. The court (FRICK, J.,) rejected both these prayers, and to this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Wm. Schley* for the appellant, stated, that if *any one* of the grounds assigned in the first prayer is a *good* one for setting aside the deed, the prayer is not defective, because it contains a *bad* one, and that the several reasons assigned in the prayer are to be treated as so many *separate prayers*, if any one of which presented a valid objection to the deed it was error to reject it. He then argued, in support of this prayer, that the deed was void upon its face:

1st. Because of the power given to the trustee to *arbitrate* and *compound* at his *discretion.* Independent of the authority in the deed he would have no such powers, and if so, can the deed be good which gives him such powers? If such power had been reserved to the *grantors*, could there be a doubt the deed would be void?—if they cannot reserve this power to themselves, how can they confer it upon the trustee of their own selection? The terms of the trust are binding upon the trustee, and a court of equity cannot *interpolate* a new trust upon it. 2 *Selden,* 520, *Nicholson vs. Leavitt.* The fact, therefore, that equity would interfere and restrain the trustee from doing wrong, cannot render the deed good if its terms are otherwise bad. In *Wakeman vs. Grover,* 4 *Paige,* 41, and on appeal

in 11 *Wend.*, 201, it was held, that a power to compound with *creditors* renders the deed *void*. In my opinion, the deed is thrice as objectionable where the power is to compound with *debtors*. By such a deed, the grantor in principle *holds on to his property*, and cannot be said to *devote it to his creditors* when he gives this power. The power is a dangerous one and would produce great mischief, and is contrary to the authorities, which decide, that the grantor must part with the *entire dominion* over the property. 9 *Barbour*, 257, *Woodburn vs. Mosher*.

2nd. Because of the power to the trustee to dispose of the property *gradually*, in the manner and on the terms in which, *in the course of their business*, the grantees had sold and disposed of their merchandise. This position is sustained by the following cases: 9 *Paige*, 405, *Meacham vs. Sternes*. 7 *Paige*, 37, *Hart vs. Crane*. 2 *Comstock*, 371, *Barney vs. Griffin*. 9 *Barbour*, 357, *Woodburn vs. Mosher*. 4 *Sandf.*, 279, *Nicholson vs. Leavitt;* and on appeal, in 2 *Selden*, 510. 11 *Barbour*, 198, *Whitney vs. Krows*. 12 *Do.*, 168, *Burdick vs. Post*. 31 *Eng. C. L. Rep.*, 254, *Owen vs. Body*. There is no Maryland *decision* to the contrary of this view. The question here has always been, whether there could be a *preference*, and whether the stipulation for releases from the asserting creditors avoided the deed or not? The point has, I admit, been passed *sub silentio*, but it is now raised and *argued* for the *first* time. The party must devote his property *bona fide* to the payment of his debts without *any delay*, (1 *Iredell*, 499, *Hafner vs. Irwin;* 9 *Sme. & Mar.*, 433, *Arthur vs. Bank of Vicksburg;*) and here the power is not simply to sell *on credit*, but *gradually*, as the grantors, in the course of their business, had been accustomed to sell.

3rd. Because of the power to the trustee to sell the property *by retail*, or in parcels, at his discretion.

4th. Because of the power to the trustee to employ *agents* in the execution of the trusts of the deed. Whenever there is *discretion and judgment* placed in the trustee, the authority is *personal* and cannot be *delegated*. 26 *Wend.*, 485, *Lyon vs. Jerome*. 11 *How.*, 223, *Warner vs. Martin*. There is

no *privity* between the *agent* appointed by the trustee and the creditors. 3 *Sandf.*, 545, *Litchfield vs. White.* The deed moreover declares, whilst giving this power to the trustee to appoint *agents*, that he shall be liable only for *personal*, and *actual* and *wilful* wrong or default.

5th. The prayer is not objectionable, because it does not put the question of fraud *in fact* to the jury. The statute of *Elizabeth* says, that any deed made to hinder, delay *or* defraud creditors, is void; it is in the distributive; and if the *effect is to delay creditors*, the statute speaks and denounces the deed, no matter how *pure* the motives of the parties to it may have been. 3 *Md. Rep.*, 39, *Green & Trammel, vs. Trieber.*

6th. But it is said a court of law has no jurisdiction to declare this deed void:—1st, because the proceedings under the act of 1845, ch. 166, gave a court of equity jurisdiction of the case. But this act is but a *revenue law*, and gives the court no jurisdiction. It merely says, the trustee must perform his trust *according to the deed.* 2nd, because the funds were in the hands of a court of equity by virtue of the proceedings set out in the record, and therefore not liable to attachment. But this objection is likewise unavailing. A *voluntary application* to a court of equity by a trustee will not prevent a party from pursuing his *legal remedies.* It can only be done by a bill regularly filed, making all persons interested parties, and then not until a *decree* or some decisive action by the court. 2 *Md. Rep.*, 17, *Glenn vs. Gill.* Again, the *validity* of the *deed* was not in *issue* in the proceedings in equity, but they *assumed* its validity. Besides this, the appellee did not plead the pendency of this suit, which he should have done if it was a good defence, or obtained an injunction to restrain the case at law. Instead of doing this, he pleads simply *nulla bona.*

*Frederick W. Brune* and *Chas. F. Mayer* for the appellee, argued:

1st. That even if the deed *be* regarded as void, the funds are not liable to attachment in this case:—1st, because the filing of the bond under the act of 1845, ch. 166, and the operation of that act draw jurisdiction of courts of equity to such deeds as

the present. 2nd, because by the proceedings in equity, the jurisdiction of that court attached to the funds, and is exclusive of that of any other court, especially as all the creditors of the grantees are, by these proceedings, invoked into that court, which alone could do full justice to the parties in case the deed should be held invalid. That funds under the control of a court of equity cannot be attached, is decided in *Glenn vs. Gill*, 2 *Md. Rep.*, 1. See also on this point 4 *Johns. Ch. Rep.*, 640, *Thompson vs. Brown.*

2nd. That the first prayer of the appellant is bad for several reasons:—1st. It submits several propositions, if any one of which is bad there was no error in rejecting the prayer in its entirety, because if granted, it would have affirmed that the deed was void on each of all the grounds set forth in it. If, then, any one of the reasons assigned is not a legal ground for declaring the deed void, it was the duty of the court to reject the prayer. 12 *G. & J.*, 236, *Gray vs. Crook*. *Ibid.*, 484, *Doyle vs. Commissioners of Balto. County*. 5 *G. & J.*, 102, *Sasscer vs. Walker*. *Ibid.*, 489, *Grahame vs. Harris*. 4 *G. & J.*, 407, *Charlotte Hall School vs. Greenwell*. 3 *Do.*, 435, *Sothoron vs. Weems*. 3 *Gill*, 198, *Budd vs. Brooke*. 4 *Md. Rep.*, 305, *Greenway vs. Turner*. 5 *Do.*, 448, *Stewart vs. Spedden*. 2nd. It does not put it to the jury to find that the deed was *fraudulent;* the fraud is left out of the prayer, though it includes the delay, which is but evidence of the intent to defraud, and this intent must be found by the jury. Delay is not, *per se*, fraud, or a fraudulent act. If the deed be *bona fide*, there may be delay and ultimate defeat of the claims of creditors. 1 *Iredell*, 496, *Hafner vs. Irwin*. 5 *Eng. Law & Eq. Rep.*, 430, *Janes vs. Whitbread*. 3 *Maule & Selw.*, 374, *Pickstock vs. Lyster*. 15 *Eng. Law & Eq. Rep.*, 529, *Smith vs. Hurst.*

3rd. But the deed is not void for *any* of the reasons assigned in the prayer.

1st. The authority given to the trustee to arbitrate and compound at his discretion, is a reasonable, usual and proper power, not tending to hinder, delay or defraud creditors, but advantageous to creditors, as tending to the proper and speedy

settlement of the trust, although it may not always be necessary to exercise it. In this case the power to compound has never been exercised, nor does it appear that the power to arbitrate has been exercised. A court of equity authorises compromises and arbitrations in cases of such trusts, where even no express nor implied provision for them exists in the deed. Such a proceeding on behalf of trust interests *cannot be regarded as evidence of fraud*, and so the provision toward such action cannot in this deed be considered as frudulent, the trustee being necessarily subject to the control of a court of equity in the use of that and every power conferred by the deed. This provision, and all others objected to by the prayers, relate merely to the *administration* of the trust and are purely *modal*, (to use a civil law phrase,) and cannot vitiate the *trust itself*, essentially considered. A similar provision was contained in all the deeds so much litigated in this court. 4 *Gill*, 130, *McCall vs. Hinkley.* 7 *Gill*, 446, *Albert & Wife vs. Winn & Ross.* A stipulation for releases does not invalidate the deed. 8 *Gill*, 472, *Kettlewell vs. Stewart.* 3 *Md. Rep.*, 46, *Sangston vs. Gaither. Lewin on Trustees*, 417. *Edwards on Receivers*, 354. *Hill on Trustees*, 344. *Angel on Assignments*, 210, 219. *Oliver's Conveyancing*, 154. *Curtis' Conveyancing*, 42. 21 *Alabama Rep.*, 382, *Rankin vs. Lodor.*

2nd. The authority to the trustee to dispose of said property gradually, in the manner and on the terms in which, in the course of their business, the said firm had, before the making of the said deed, sold and disposed of their merchandise, does not render the deed void. This is a permission given to the trustee for the benefit of the trust, which he might exercise or not as he deemed eligible. It could not be required, certainly, that all the property should be sold at the same time or in one mass, and any other mode of selling is necessarily gradual. As the prayer does not state or submit to the jury the manner in which Turnbull & Co. had been in the habit of selling their merchandise, the court, before it could declare the deed void on this ground, would have to assume, that the mode of selling goods practised by Turnbull & Co. was such as was calculated to hinder, delay, or defraud the creditors.

3rd. The authority to sell by retail or in parcels, as the trus-

tee might deem eligible, is also a reasonable and proper power, because there are many things which cannot be sold to advantage in any other way. Such a discretion would be conferred in a judicial trust, as also would, and is habitually, a right to sell on credit. The privilege cannot, *in se*, therefore, be regarded as fraudulent or as evidence of fraud.

4th. The provision that the trustee is not to be answerable but for personal and actual and wilful wrong and default, is a common provision, intended to protect the trustee and not to injure creditors. It is one that equity sanctions; and a court of equity regulates a trustee's liability according to the principle that that provision implies. A similar provision was in the deeds in 4 *Gill*, 133; 8 *Gill*, 472. See also 2 *Stewart*, 86, *Robinson vs. Kaflege.* 9 *Porter*, 566, *Ashurst vs. Martin.* 21 *Ala. Rep.*, 390, *Rankin vs. Lodor.* 6 *Watts & Seargt.*, 312, *Hennessy vs. The Western Bank.* *Curtis on Conveyancing*, 42.

5th. The power to sell *on credit* does not vitiate the deed as announced in the second prayer of the appellant. *Burrill on Assignments*, 196, 197. 21 *Pick.*, 185, *Neally vs. Ambrose.* 1 *Metcalf*, 79, *Hopkins vs. Ray.* 8 *Leigh*, 273, *Skipwith vs. Cunningham.* 5 *Eng. Law & Eq. Rep.*, 431, *Janes vs. Whitbread.* 9 *Gill*, 211, *Beatty vs. Davis.* 7 *Paige*, 37, *Hart vs. Crane.* 4 *Sandf.*, 252, *Nicholson vs. Leavitt.*

MASON, J., delivered the opinion of this court.

We are of opinion that the question of the validity of the deed of trust from the Messrs. Turnbull to Inloes, is properly presented on this appeal.

The objection raised by the appellees to the present proceeding, namely, that the court of equity having assumed jurisdiction over the subject, has thereby ousted the court of law of the jurisdiction which it now seeks to exercise, cannot be sustained. The equity proceeding which has been set up as a bar to the present action, does not propose to assail the deed of trust, but on the contrary, it rests upon the assumption that the deed is valid, and was intended merely to invoke the aid of a court of equity to carry out and enforce the trusts

contemplated by said deed.   The present proceeding is based
upon the contrary assumption, namely, that the deed is null
and void; the objects, therefore, of the two proceedings being
entirely opposite in their character and purposes, cannot be
said to conflict with each other.   And further, to this chan-
cery proceeding the plaintiffs in this action were no parties,
and therefore they should not be bound by it, even if it had
contemplated in its range the exigencies of their case.

The appellants in the court below offered two prayers, each
designed to present to the mind of the court the invalidity of
the deed of trust.   Both were rejected.   The first prayer
assigns a number of reasons why the deed should be vacated,
and it is now urged by the appellee that if any of those several
reasons should not constitute a legal ground for declaring the
deed void, it was the duty of the court to reject the prayer in
its entirety, notwithstanding it should appear that the deed
was void for some one, or more, of the reasons assigned.   In
this view we do not concur.   These several legal propositions
should be treated as so many separate prayers, and if one
presented a valid objection to the deed, it was error in the
court to reject it.   It was not proposed by the prayer that all
the several objections urged to the validity of the deed should
concur, in order to make the deed void; and the prayer would
have sufficiently raised the point of the viciousness of the deed
upon any ground, if no particular reasons at all had been
assigned in the prayer itself for vacating it.

Is the deed of trust void or not, is the question to be deter-
mined on this appeal.   If void for any reason, it interposes
no impediment to the appellants' right to recover in this
action, but, on the contrary, if valid, the plaintiffs have no
case in court.

Although it has been more than once decided in Maryland
that a debtor, by the common law, and apart from our insol-
vent system, may, by assignment of his property, or by pay-
ment, secure one creditor to the exclusion of others; yet such
a provision in a deed of trust is only *permitted* by a court of
equity, but so far from commending the transaction to the

court as one of honesty and fair dealing, should rather throw a cloud of distrust upon it, and where such a preference is followed up by other provisions, equally suspicious in their character, the court will have little difficulty in discovering such a fraudulent design on the part of the debtor, as to render it imperative upon them to vacate the deed. The present deed creates preferences in favor of particular creditors, to the exclusion of others, and in addition provides as follows, viz:

*Third.* That said "Inloes, his executors or administrators, shall, at his discretion, sell as aforesaid, all or any part, or parts, of said goods, wares, merchandise, chattels and effects, by public or private sale, and by wholesale or retail, or in parcels, as may by him, as to all or any portions of said property, be deemed eligible, and it being understood that said property may be gradually sold in the manner and on the terms in which, in course of their business, said Turnbull & Co. have sold and disposed of their merchandise.

"*Fourth.* It is further as aforesaid declared, that said Francis H. Inloes, his executors or administrators, may, at their best discretion, appoint and employ any agent, agents and clerks, for selling as above provided, at such compensations as the said trustees may deem proper, and causing such sales to be made in any store or warehouse that from time to time, as he may see fit, he may rent and have occupied.

"*Fifth.* It is further declared as part of the trust of these presents, that the said Inloes, or his executors or administrators, shall not, as trustees aforesaid, or in any matter of or relating to this trust, be deemed in any wise liable as for any violation of said trust, or as for any omission or neglect, save only for their own personal, and actual and wilful wrong or default."

There is no *express provision* in this deed that the trustee shall sell *on credit*. The right to do so, however, might undoubtedly be exercised under the power conferred by the deed, "that said property may be gradually sold in the manner and on the terms in which, in course of their business, said Turnbull & Co. have sold and disposed of their merchandise,"

We do not wish to be understood as pronouncing the present deed void upon the isolated ground alone of its empowering the trustee to sell *upon credit.* We do not deem it necessary to pass expressly upon that point. Until latterly deeds of assignment containing such a provision have been held generally not to be thereby vitiated, on the ground of hindering and delaying creditors. But very recently a different doctrine has been established by the Court of Appeals of New York, and so far as that State is concerned it may now be said to be settled, that a deed of trust containing a clause conferring upon the trustee or assignee power to sell on credit, will not be sustained. For this principle the very cogent reason may be assigned, that a debtor cannot, by the creation of a trust, avoid the obligation of immediate payment, or extend the period of credit, without the assent of the creditor. *Nicholson vs. Leavitt,* 2 *Selden,* 510. *Barney vs. Griffin,* 2 *Comstock,* 365.

We are not aware that this question has ever been *expressly* brought to the mind of our own Court of Appeals, and passed upon by them. In the case of *Beatty vs. Davis,* 9 *Gill,* 211, the deed of trust, the validity of which was the question involved on the appeal, contained the provision that the trustee should have power "to sell the said real and personal property, either at public or private sale, *and upon such terms and notice* as he may deem most expedient, &c., and in case he shall deem it necessary for the purposes of this trust to mortgage the said real estate or any part thereof, he is hereby invested with full power so to do." This deed was sustained.

It might appear, at first view, that the power to sell *upon such terms* as the trustee might think proper, was equivalent to an authority to sell *upon credit,* and therefore our Court of Appeals may be regarded as having sanctioned such a provision in deeds of trust. But in the case of *Macham vs. Stearns,* 9 *Paige,* 398, the trustee was directed by the deed to sell the trust property *at such reasonable times as should seem proper to him;* and in that case, though the deed was sustained, yet it was held that this did not authorise him to sell *at retail and on credit:* and it is by no means impossible that our own

court, in *Beatty vs. Davis*, might have said, if the question had been directly brought to their view, that they did not regard the deed in the case as conferring the power to sell *on credit*.

But omitting the further consideration of this point, (which we repeat we do not wish to be understood as deciding,) we regard the deed now before us as void upon another ground. It expressly empowers the trustee at his discretion to sell the property covered by the deed, *gradually, in the manner and on the terms in which, in course of their business, said Turnbull & Co. have sold and disposed of their merchandise.*

Without adverting to other objectionable, if not fatal, provisions in this deed, the one to which we have just referred is sufficient, in the judgment of this court, to render the deed null and void as against creditors. It simply seeks, through the instrumentality of a trustee, to provide for carrying on the business of the concern in the same manner in which it had been before conducted, and for an indefinite period, free of all control or interference on the part of creditors. Surely, if such a provision in a deed is not calculated to *hinder and delay creditors*, we are at a loss to know what could have such an effect, short of a conveyance in trust for the benefit of the grantor himself. A debtor cannot thus postpone his creditors to an indefinite period, without their assent. A conveyance which thus attempts to deprive creditors of their just rights to enforce their claims against the property of their debtor, by placing it beyond their control, for an uncertain and indefinite period, must be regarded, in conscience and law, as a fraud. This subject has been very fully considered by this court in the case of *Green & Trammell, vs. Trieber*, 3 *Md. Rep.*, 11, and the general principle distinctly announced, that the law will not tolerate any hinderance in assignments for the benefit of creditors, beyond what may be necessary for the purposes of the trust.

There are cases, it is true, in which deeds of trust for the benefit of creditors, have been sustained as valid, which contain provisions for the continuance of the business of the

debtor or grantor, either by himself or by his assignee or trustee. *Janes vs. Whitbread,* 5 *Eng. Law & Eq. Rep.,* 431. *Nunn vs. Wilsmore,* 8 *Term Rep.,* 521. *Cunningham vs. Freeborn,* 11 *Wend.,* 240. *De Forest vs. Bacon,* 2 *Conn.,* 633. *Kendall vs. Carpet Company,* 13 *Conn.,* 383. *Hitchcock vs. Cadmus,* 2 *Barb. S. C. Rep.,* 381. *Foster vs. Saco Company,* 12 *Pick.,* 451. *Woodward vs. Marshall,* 22 *Pick.,* 468. *Ravisies vs. Alston,* 5 *Ala. Rep.,* 297. But it will be found, on examination of those cases, that most, if not all of them, rest upon the important principle, not applicable to the present case, that the stipulation in question was designed more effectually to promote the interests of the creditors, and not intended for the benefit of the debtor; or, where it was intended to be ancillary to the winding up of the debtor's business, as where he had on hand at the time of the assignment unmanufactured material in the way of his business, or the like. In the case of *Janes vs. Whitbread,* 5 *Eng. Law & Eq.,* 431, the deed which was of this character, was sustained expressly upon the ground, that the carrying on the trade being ancillary to winding up the affairs of the debtor, did not avoid the deed. And in the present case, if the grantors had been manufacturers of oil-cloths, carpets, and the like, we would not be prepared to say that a deed containing a provision authorising the assignee, or the debtors themselves even, to work up any unmanufactured or raw material on hand at the time of the assignment, would vitiate the assignment. But such is not the fact, and as this case at present stands, we can regard it in no other light than an attempt to place the assignee in the place of the debtors, for the purpose of carrying on the latter's business as it had been previously conducted by them before the deed of trust, without any special benefit to be derived thereby by the creditors, and without limitation or restriction upon the trustee.

We will not attempt a review of the numerous authorities which would bear upon the questions involved in this case. As far as cases have gone in sustaining voluntary deeds of trust, few, if any, can be found, which have advanced princi-

ples sufficiently comprehensive or flexible to embrace a case like the present.

The appellant's first prayer asks the court to pronounce the deed void, and to instruct the jury so to find. This prayer was improperly rejected. The deed appearing to be void upon its face, it was the duty of the court so to pronounce it, and there was nothing left for the jury to find.

Having, as we suppose, disposed of the whole case, by declaring the deed void, we deem it unnecessary to pass upon the appellant's second prayer, or upon any other of the questions raised in the course of the argument.

*Judgment reversed and procedendo awarded.*