Maennel, *et al., vs.* Murdock, *et al.,* Garn. of Falconer & Haskell.

( Decided March 10th, 1859. )

---

CHRISTIAN F. MAENNEL and GEO. A. SCHEPETER *vs.* WM. F. MURDOCK and others, Garnishees of FALCONER & HASKELL.

A deed of trust for the benefit of creditors and exacting releases is not void under the *insolvent* law of 1854, ch. 193, by reason of *preferences* contained in it; that act has no application to a case where there has been *no petition* for the benefit of the insolvent laws of the State.

A deed of trust, for the benefit of creditors, conveying individual and partnership assets of the grantors in several firms, contained a clause directing the trustees "to pay in such *order* and *priority*, and out of such part of the trust funds, as, *by law*, they may be entitled to be paid, all such creditors of the parties of the first part, being creditors in any of the *co-partnership* or *individual* relations aforesaid, as shall, within sixty days," assent to the deed and execute releases. HELD:

That this clause is entirely unobjectionable, as it displays an upright intention to submit, as far as the grantors could do so, all legal questions, as to the distribution of the fund, to the adjudication of the tribunals constituted for that purpose.

Such a deed being *one of trust*, though this circumstance does not necessarily oust the jurisdiction of a court of law, yet it enables *equity* to take cognizance of the matter, and to marshall and distribute the assets.

A clause in such a deed, authorizing the trustees to *sell* the property conveyed, "*whenever they shall think proper and most conducive to the interests of the trust*," is not objectionable.

A clause which provides that neither the trustees, nor their representatives, shall be answerable for, or bound to make good, any deterioration or loss that may happen to the trust estate, "unless the same be consequent upon their *wilful commission, omission or neglect*," does nothing more than declare what the law ascertains as the extent of their liability, and is unobjectionable.

Maennel, *et al., vs.* Murdock, *et al.,* Garn. of Falconer & Haskell.

A clause authorising the trustees, "one or more attorney or attorneys under them, for the purpose of *executing the trusts herein contained,* to appoint *at pleasure,* and to remove, and such appointment to revoke and annul," is free from objection.

APPEAL from the Superior Court for Baltimore city.

*Attachment* on judgment, issued on the 23rd of October 1854, at the instance of the appellants, by way of execution, against the lands, tenements, goods, chattels and credits of John Falconer and John H. Haskell, the defendants in the judgment, and laid in the hands of William F. Murdock, William H. Norris and George W. Dobbin, as garnishees. The garnishees appeared and plead *nulla bona,* on which issue was joined.

*Exception.* It was admitted, that the garnishees, at the time of issuing this attachment, had in their hands moneys of Falconer and Haskell, the defendants in the judgment recited in the writ, to an amount more than sufficient to cover the judgment, with interest and costs; which moneys were received and held by them, as trustees, under the following deed of trust, which was duly executed, acknowledged and recorded, and accepted by the trustees therein named. As the questions in the case depend upon the validity of this deed, it is set out at length, and for convenience of reference the several clauses thereof are designated by numbers:

(No. 1.) "This indenture, made this 16th day of September 1854, between John Falconer and John H. Haskell, of the city of Baltimore, of the one part, and William F. Murdock, William Henry Norris and George W. Dobbin, of the same city, of the other part.

(No. 2.) "Whereas the parties of the first part have been carrying on business, in the city of Baltimore, under the firm of Falconer & Haskell, and in company with a certain John Kynock, of the city of Buffalo, in the State of New York, have been carrying on business in the said city of Buffalo, and in Canada under the firm of John Kynock & Company; and also in company with the said Kynock have been carrying on business in the city of New York, under the firm of Haskell & Company.

Maennel, *et al.*, *vs.* Murdock, *et al.*, Garn. of Falconer & Haskell.

(No. 3.) "And whereas the said firms of Kynock & Company, and Haskell & Company were dissolved by mutual consent, which dissolution was duly advertised, and thereupon and thereby full power was given to the parties hereto of the first part, to take the assets and wind up the business of said co-partnership, which they proceeded to do.

(No. 4.) "And whereas, in these several relations, and also in their individual capacities, the said parties have contracted debts which they are unable to pay in whole, and now propose to assign all their estate and property for the benefit of their said creditors.

(No. 5.) "Now this indenture witnesseth, that in pursuance of said purpose of assignment, and in consideration of the sum of one dollar to them paid, by the said parties of the second part, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, assigned, transferred and delivered, and by these presents do grant, bargain and sell, assign, transfer and deliver, (in so far as by law they are entitled so to grant, bargain and sell, assign, transfer and deliver, looking at their several co-partnership relations aforesaid,)

(No. 6.) "To the said parties of the second part and the survivors and survivor of them, and the heirs, executors, administrators and assigns of such survivor, all and singular, the property, estate, effects and credits, real, personal and mixed, in possession, reversion or remainder, at law and in equity, wherever the same may be, of the said several firms of Falconer & Haskell, and of John Kynock & Company, and of Haskell & Company, and of the said parties of the first part, individually or jointly, with any other person or persons.

(No. 7.) "To have and to hold the said real and personal property, estate, effects and credits hereby conveyed and assigned, and every part thereof, unto the said parties of the second part, and the survivors and survivor of them, and the heirs, executors and administrators of such survivor, forever.

(No. 8.) "In trust, however, and to, for and upon the uses and trusts, intents and purposes hereinafter mentioned, expressed and declared, of and concerning the same; and for the

better enabling the said parties of the second part, and the survivors and survivor of them, to execute the powers hereby intended to be reposed in them, the said parties of the first part have constituted and appointed, and do hereby constitute and appoint, and in their place and stead put and depute the said parties of the second part, and the survivors and survivor of them, to be the true and lawful attorneys and attorney irrevocable of the said parties of the first part, and in their names or otherwise, as the case may require, to ask, demand, and by all lawful ways and means whatsoever, recover, receive and get into the hands, power and possession of the said parties of the second part, and the survivors and survivor of them, all the estate, property, effects and credits hereby conveyed and assigned, and acquittances for the same, or for so much thereof as may be so received, to give, execute and deliver, with full power and authority to the said parties of the second part, and the survivors and survivor of them, to compromise and settle, by taking a part for the whole, where they may deem it expedient, of any debt, claim or demand, owing to the said parties of the first part,

(No. 9.) "And one or more attorney or attorneys, under them, for the purpose of executing the trusts herein contained, to appoint at pleasure, and to remove, and such appointment to revoke and annul.

(No. 10.) "In trust, however, that as well the same estate and property, or the proceeds thereof arising by a sale of the same, (which sale the said trustees, or the survivors or survivor of them, are hereby authorized and empowered to make, whenever they shall think proper and most conducive to the interests of the trust,) as the moneys arising by the collection of the debts and claims hereby assigned and transferred shall,

(No. 11.) "In the first instance, be held liable for, and applied to, the payment of all expenses attending the execution of this trust, inclusive of counsel fees contracted and owing by the said parties of the first part, in and about the management of their affairs, since they stopped payment; and also counsel fees for prosecuting claims of, and defending and resisting claims against, the said trust estate and funds; and also a rea-

sonable commission to the said trustees for their care, diligence and attention, of, in and about the execution of the powers, trusts and duties hereby created and conferred.

(No. 12.) "And in the second place, to the payment of all claims which William F. Murdock, individually, and the firm of A. B. Davidson & Harris now, respectively, have against the said parties of the first part, as partners, whether such claims be now due or not, or arise upon endorsements for the accommodation of said parties of the first part, or in any other way.

(No. 13.) "And in the third place, to pay in such order and priority, and out of such part of the trust funds, as by law they may be entitled to be paid, all such of the creditors of the parties of the first part, being creditors in any of the co-partnership or individual relations aforesaid, as shall, within sixty days from the date of this deed, signify their assent to the terms hereof, and execute and deliver, to the said parties of the first part, a full and final release and discharge, of and from all claims and demands against them, or either of them, to the time of executing these presents, in full satisfaction and payment of all such claims, with all interest thereon, of such creditors assenting as aforesaid, and executing such release, if the funds applicable to them, respectively, shall be sufficient for that purpose, but ratably and proportionably, according to the amount of the claims of each of the said assenting creditors, if the funds applicable to them, respectively, shall be insufficient to discharge the whole.

(No. 14.) "And in the fourth place, after the application, as is last above directed, of so much of said funds as may be necessary, to apply the residue, if any, to the payment, in such order and priority, and out of such part of the trust funds as they may respectively be entitled to be paid, of all other creditors of the said parties of the first part, co-partnership and individual, as aforesaid, ratably and in equal proportions in their several classes, or in the whole, as the said trust funds may suffice.

(No. 15.) "And lastly, after the payment in full of all the debts of the said parties of the first part, out of such trust funds

as may be properly applicable thereto, to pay over the balance or surplus, if any, to the said parties of the first part, their executors, administrators or assigns, in the proportion in which each may be entitled thereto.

(No. 16.) "And it is hereby declared to be the express condition upon which the aforegoing trust is accepted by the said parties of the second part, that neither the said trustees, nor their representatives, shall be answerable for, or bound to make good, any deterioration or loss that may happen to the said trust estate, effects and property, unless the same be consequent upon their wilful commission, omission or neglect. In testimony whereof, the said parties of the first and second parts have hereunto subscribed their names and affixed their seals, on the day and year first above written."

The plaintiffs then asked an instruction to the effect, that the above deed was void and inoperative as against them, but the court (Presstman, J.) refused to grant this prayer, and to this ruling the plaintiffs excepted, and the verdict and judgment being in favor of the garnishees, appealed.

The cause was argued before Le Grand, C. J., Eccleston, Tuck and Bartol, J.

J. Mason Campbell and Thos. S. Alexander for the appellants, relied upon the following objections as fatal to the validity of the deed.

1st. The deed carries the assets of three firms, viz., Falconer & Haskell, Kynock & Co., and Haskell & Co., one of the partners (Kynock) in the two firms last named being no party to the deed, and its declared purpose is to settle the affairs of those firms with their respective creditors. It is submitted, that the deed is void by reason of the junction of all these separate concerns in one conveyance, for administration, together. In the first place it exposes the creditors of Falconer & Haskell (to which class the appellants belong) to be delayed of their dividends, by proceedings instituted by the creditors of Haskell & Co., and Kynock & Co., for the avoidance of the deed. These last named creditors are strangers,

in interest, to the appellants, and yet the rights of the appellants are subject, by the execution of this deed, to disturbance and defeat by these strangers.    This ground of objection would be available, even if there were apparent upon the face of the deed no flaw in it.    The risk of fatal defects, *dehors* the deed, would be enough.    But, in this instance, it is certain the deed could not stand an assault by the creditors of Kynock & Co., or of Haskell & Co., because it stipulates, in effect, for a release of Kynock, (by the release, without reserve, of his partners in these firms,) and yet does not convey Kynock's separate estate.    In the next place, if there were no other objection, it suffices that the terms of the deed virtually authorise the trustees to delay the distribution of Falconer & Haskell's assets among *their* creditors, until all questions arising out of the claims made upon Kynock & Co., or Haskell & Co., or the prosecution of claims due those firms are settled.    This consequence grows necessarily out of the power which the trustees have to apply Falconer & Haskell's assets to pay the expenses of resisting claims against, or collecting debts due to, the other partnerships.    In the last place, the clause No. 11, which allows the trustees, before any distribution, to apply so much of the fund in their hands, made up of all the estates conveyed, as may be necessary "for prosecuting claims of, and defending and resisting claims against, the said trust estate and funds," presents a fatal objection to the union, in a single deed, of several indebted concerns.    The fund in the hands of the trustee, so to be applied, is to spring from several sources: 1st, the partnership estate of Falconer & Haskell; 2nd, the individual estate of Falconer; 3rd, the individual estate of Haskell; 4th, the partnership estate of Kynock & Co.; 5th, the partnership estate of Haskell & Co.    Coming from all these quarters, it is to be massed together into a single fund, and out of that general fund payments are to be made for prosecuting claims of, and resisting and defending claims against, the said trust estate and funds.    Thus Falconer & Haskell's assets may all be swallowed up in suits against the insolvent debtors of Kynock & Co., or in resisting the attempt of one creditor of Haskell & Co., to get a preference over the other

creditors of that firm. A man in failing circumstances cannot devote his property to pay another man's debts.

2nd. The 12th clause gives a preference to two specified creditors. A deed of trust, stipulating for releases, must not only convey all the grantor's property, but convey it equally for the benefit of all. 9 *Gill*, 222, *Powles, et al., vs. Dilley, et al.* The act of 1854, ch. 193, sec. 13, clearly strikes down such a deed as this, because the preference is such as is there *condemned.*

3rd. The 13th clause directs the trustees "to pay in such order and priority, as *by law* they may be entitled to be paid, all such of the creditors of the parties of the first part, being creditors in any of the co-partnership or individual relations aforesaid, as shall," &c. This clause assumes there is a distinction between the creditors and the funds applicable to their satisfaction, but it does not declare what that distinction is. It leaves it to be ascertained "*by law.*" The grantors probably meant that Falconer & Haskell's assets ought to pay Falconer & Haskell's debts, Falconer's assets his individual debts, and so on, but they do not say so, and the question is, whether, under the circumstances of the case, "the law" says so, or says anything on the subject? At law, strictly speaking, there is no rule whatever limiting the claims of partnership creditors to partnership assets. A partnership creditor suing and recovering judgment against the partners may take in execution separate as well as joint assets. 6 *Ves.*, 126, *Ex-parte Ruffin.* 1 *Story's Eq.*, sec. 675. Assuming, however, (what is by no means conceded,) that the words "*by law*" mean law in its largest sense, as including *equity*, is there any rule in equity which prescribes for that *forum* the distribution of partnership and separate assets *in such a case as this?* It will be found, on examination, that the only cases in which equity prescribes any rule, are cases of dissolution by technical bankruptcy, or the death of a partner. *Story on Part.*, secs. 360, 361. Whether, therefore, we look to law or equity, there is no rule laid down for the distribution of partnership and individual assets in a case circumstanced like the present, in which there is neither death nor bankruptcy. The deed then pre-

scribes no rule of distribution, but leaves the distribution to the law governing the case, and there is no law governing such a case. The only law laid down in the books applies to quite other and different cases. If, however, the terms of the deed be disregarded, and a loose construction should substitute for the words "by law," the words "by analogy of the law," so as to bring to bear on this case the rule which belongs to other cases in some degree resembling it, it must be conceded, that the only quarter to which resort can be had, will be to the cases of dissolution by technical bankruptcy or death, and to the rule which governs distribution in such cases. But it will be found, that the rule is not the same in both these cases. Where one partner dies, a joint creditor may resort to his individual assets, in the first instance, without resorting to the joint funds in the hands of the surviving partner. 1 *Mylne & Keene*, 582, *Wilkinson vs. Henderson*. In bankruptcy the joint creditors cannot go upon the separate estate until he has first exhausted the joint estate. There are other points of difference between the distributions in these classes of cases. *Story on Part.*, secs. 362, 363, and cases in the *notes*. It is plainly impracticable then, to find, in the only analogies possible, the rule sought for, as those analogies furnish different rules, and there is nothing to indicate which is meant. In addition to all which, it is plain, that the clause in question was framed upon an entire misapprehension. It manifestly proceeds upon the assumption, that the creditors, *as such*, have a lien, the joint creditors upon the joint estate, and the separate creditors upon the individual estates. It is well settled, that the creditors have no such lien as is supposed. 2 *Md. Rep.*, 1, *Glenn vs. Gill.* 7 *Md. Rep.*, 403, *Guyton vs. Flack.* 8 *Barb.*, 595, *Greenwood vs. Brodhead.* 11 *Barb.*, 240, *Van Rossum vs. Walker.*

4th. The power of sale given to the trustees, by the 10th clause, is fatal to the deed. The sale is not to be made at once, but is to wait the pleasure of the trustees, and their action is to be determined by what they shall think conducive to the interest, *not of the creditors*, but of *the trust.* It might be well enough for creditors appointing assignees, to vest them

with such discretion, but not so where the debtor undertakes to guide their action for his own benefit. There is here an ultimate trust, not implied merely, but expressed, for the benefit of the grantors, and the interest confided to, and to be consulted by, the trustees, in selling, is not merely that of creditors, but of the grantors likewise. If, by waiting and keeping the property out of the market, the trustees can realize one hundred cents for the creditors, and a surplus for the debtors, they are not to consult merely what is best for the creditors, but what will benefit the debtors and keep the creditors waiting. 9 *Barb.*, 257, *Woodburn vs. Mosher.* 7 *Md. Rep.*, 391, *American Exchange Bank vs. Inloes.*

5th. The limitation of the responsibility of the trustees in the 16th clause is also a fatal objection. 3 *Selden*, 438, *Litchfield vs. White.* *Burrill on Assignments*, 209. Their liability is limited to "their wilful commission, omission or neglect," which means wilful commission, wilful omission, and wilful neglect, for otherwise the *slightest* omission or neglect would render them liable, whereas nothing but *wilful* commission will do, which was clearly not the intention of the parties to the deed. But the law holds trustees responsible for something less than wilful commission, omission or neglect.

6th. The power of composition with debtors, contained in 8th clause, also vitiates the deed. 7 *Md. Rep.*, 391. 9 *Barb.*, 257.

7th. The power given by the 9th clause, to the trustees, to delegate their powers, is a new and wholly indefensible clause in such a conveyance.

8th. By the 11th clause, the trustees were to *hold* the *entire* estate *liable for*, and apply it to the payment of, *all expenses* attending the execution of the trust, inclusive of counsel fees, contracted and owing by the grantors, in and about the management of their affairs, *since they stopped* payment. This authorises them to hold the whole of the trust estate until all the litigation, in reference to the trust, is terminated, and such power makes the deed fraudulent and void. 23 *Barb.*, 68, *D'Ivernois vs. Leavitt.*

Maennel, *et al.*, *vs.* Murdock, *et al.*, Garn. of Falconer & Haskell.

*Wm. H. Norris* and *Geo. W. Dobbin* for the appellees, argued:

1st. The fact, that the deed conveys several separate estates is no objection to it; for if such an objection could be sustained then it would follow, that a party could not convey his individual and partnership property by the same conveyance, for these are two estates. The error in the argument for the appellants on this point is, that it confounds *conveyance* with *distribution*. There is no delay or hindrance of creditors by the *conveyance* of the estates of the three firms in one deed; their *administration* is to be separate, and by operation of law it is the same thing, so far as administration is concerned, as if there were separate conveyances of each estate simultaneously executed, and it is an erroneous construction of the deed to say, that the settlement of the estate of one partnership, is to be deferred until the expense of resisting claims against or collecting debts due to the other partnerships is paid. Nor is the objection, that Kynock is no party to the deed, though it stipulates for releases to him, one which can be taken advantage of by these appellants, for they are *not creditors of Kynock*, and not therefore prejudiced by the deed. The deed is only void by the *Stat. of* 13*th Eliz.*, as to those who are hindered and delayed by it; as to all others it is valid.

2nd. The preference contained in the 12th clause is legal. The *insolvent* law of 1854, ch. 193, has no application to such a case, but has exclusive reference to cases of technical insolvency, where there has been a petition for the benefit of the insolvent laws. 11 *Md. Rep.*, 452, *Triebert vs. Burgess.* This law does not declare, that all other deeds than those mentioned in its 13th section *shall be void*, and that such a preference as the one in question, in a deed not affected by the insolvent laws, is legal, is manifest from the case of *Powles vs. Dilley*, cited by the appellants. See, also, 22 *Barb.*, 550, *Bank of Silver Creek vs. Tallcott.*

3rd. By the true construction of the deed, looking to its recitals, which fully set out the co-partnership and individual relations of the grantors, the purpose of the deed, and the clauses providing for the distribution of the trust funds, there is no provision therein, which either expressly directs or would per-

mit, the application of any part of the funds in a way contrary to the provisions of the law, as they would be declared by a court administering the trust.

The *intention* of the parties is to prevail in the construction of *deeds*, as well as all other instruments, unless it violates some established principle of law. (9 *G. & J.*, 77, *Hope vs. Hutchins.*) Such a deed as this is not to be construed as to what it *may mean, (Burrill on Assignments,* 347,) but it must be construed by reference to all its clauses and parts, and the *recitals* contained in it are to be looked to as the language of the grantors, for the purpose of ascertaining their intention. 3 *Adol. & Ellis,* 513, *Rogers vs. Brooks.* 69 *Eng. C. L. Rep.,* 750, *Walsh vs. Trevanion.* 76 *Eng. C. L. Rep.,* 652, *Boyes vs. Bluck.* 8 *Md. Rep.,* 426, *Malcolm vs. Hodges.* 23 *Pick.,* 444, *Wiggin vs. Tudor.* Looking, therefore, to the *recitals* in this deed, and all its clauses, it is obvious the grantors intended to distribute these funds among the creditors of the several partnerships in such *order* and *priority* as *the law* directs. Now the principle upon which the argument for the appellants proceeds is, that though the partners have an equity to have the partnership effects applied to partnership debts, and have a *lien* on them to have them so applied, yet the creditors have something approaching to a lien, but not a lien, and, therefore, there is no law of distribution in such a case. The answer to this is, that the fact that the creditors have no lien, does not authorise the inference that there is no law of *distribution*. There is a law of distribution in such a case, the law, that all the property is to be distributed among all the creditors equally, both joint and several, where they have no lien—the law of equality. If the partners have an equity or lien, there is nothing to prevent their *conveying* that right and lien, and to impress it upon the proceeds of sale in the hands of the grantees. But if they have no such right to convey, the property is then left to be distributed equally among all their creditors, and this deed was framed with both aspects—to suit either alternative. The deed is in fact very similar to that in *Andress vs. Miller,* 15 *Penn. State Rep.,* 316, where the court held, that the intention of the parties was

to preserve the distinction between joint and separate creditors, but as we have said, it was framed to suit either alternative. The only objection then is, that the grantors have not pointed out all the modes of distribution. But it is because the law of distribution is not clear, that the courts say, the trustees may go *into equity* and ask the advice of that court as to the distribution and management of the trust, and this protects the deed from all cavil, as to the uncertainty of the distribution pointed out in it. 11 *Md. Rep.*, 184, *Inloes vs. American Exchange Bank.*

4th. The clause exempting the trustees from liability for a loss to the trust estate, except the same shall arise from their wilful commission, omission or neglect, creates no exemption which the law does not create irrespective of such clause, and of consequence the validity of the deed is not affected thereby. *Story on Agency*, sec. 183. 8 *Gill*, 430, *Gray vs. Lynch & McDonald.* 6 *Watts & Sergt.*, 304, 313, *Helmsley vs. Western Bank.*

5th. The power of sale given to the trustees, to be exercised "whenever they shall think proper and most conducive to the interests of the trust," is a reasonable power like the power of sale *on credit*, and cannot vitiate the deed. *Burrill on Assignments*, 347. 11 *Md. Rep.*, 184, *Inloes vs. American Exchange Bank.* By it the trustees are left to a *sound discretion.* The *intention* of the parties comes in aid of the deed, and the words "most conducive to the interests of the trust," construed by that intent, mean, "most conducive to the interests of creditors." The power of *composition* is also for the benefit of creditors, and is left to the sound discretion of the trustees. The power contained in the 9th clause, by the true construction of the instrument, only gives the necessary power of sub-agencies. *Story on Agency, sec.* 201.

We insist, therefore, that the deed is unobjectionable in every particular. It was prepared with great care, and on the basis of that in *McCall vs. Hinkley*, 4 *Gill*, 128. The judges who sustained that deed were bound to, and doubtless did, consider all its clauses, and by sustaining *that* they have sustained all the provisions incorporated into *this deed.*

LE GRAND, C. J., (with BARTOL, J., concurring.)

The appellants in this case had recovered a judgment in the Superior court of Baltimore city, against Falconer and Haskell, upon which they issued an attachment, by way of execution, and laid it in the hands of the appellees, who were trustees under a deed from John Falconer and John H. Haskell. The garnishees pleaded *nulla bona*, and, on issue joined, the plaintiff offered in evidence the writ of attachment, and the admission of the garnishees, that at the time of its issual and service on them, they had in their hands moneys of Falconer and Haskell, more than sufficient to cover the amount of the judgment against the defendants.

Upon this state of case, the plaintiffs offered a prayer, (which was rejected by the court,) in effect denying the efficacy of the deed of the defendants, so far as their claim to judgment, in this case, is concerned. The only questions, therefore, which are now before us, are those which involve the validity and sufficiency of the deed set out in the record.

We shall examine the objections urged to the deed, in the order they have been presented to us on the part of the appellants, who were the plaintiffs below. The deed, as it appears in the report of this case, is separated into sections, and as such numbered, and, for the purposes of perspicuity, we shall, in what we say, notice the particular parts referred to, by the designation of the number affixed to it.

The *second* and *third* sections of the deed recites, that the defendants, under the firm of Falconer and Haskell, carried on business in the city of Baltimore; that in company with John Kynock, of the city of Buffalo, they carried on business in the city of Buffalo and in Canada, under the firm of John Kynock & Company; and also carried on business in company with the said Kynock, in New York, under the firm of Haskell & Company. It is also recited, that the said firms of Kynock & Company, and Haskell & Company, were dissolved by mutual consent, which dissolution was duly advertised, and that thereupon, and thereby, full power was given to the defendants, to take the assets and wind up the business of said co-partnerships, which they proceeded to do.

To these clauses of the deed are interposed two objections. 1st. That the deed is executed by Falconer and Haskell only; 2nd. That by uniting in the same trustees, the power to settle the affairs of three distinct firms, the separate creditors of each will be delayed in the acquisition of what belongs to them, until the assets of all be accurately ascertained, and ready for final distribution. In reply to the first of these objections, it is only necessary to observe, that the failure of Kynock to unite in the deed, can in no sense give the appellants cause of complaint, whatever right; in this regard, it might afford to the individual creditors of Kynock, or to those of the firms of which he was a member. The appellants have no claim against either Kynock or the firms, as such, of which he was a member. All the appellants have a right to ask is, that the assets of Falconer and Haskell, *individual* and *partnership*, shall be made liable for the payment of their debts, and this is done by the deed. The second objection, in our view of it, is founded in a misapprehension of the true character of the deed. It contemplates separate distributions; that is to say, the funds belonging to the several firms and to the individuals composing each, are to go, in their proper order, to the creditors of each. The accounts of each can just as readily be kept distinct, the one from the other, as though separate deeds had been made in each case. Each fund is only to be subjected to the expenses and delays incident, and properly belonging, to it. We are unable to perceive the force of the objection. If the trustees fail to discharge their duty in this particular, a court of equity will be always ready to compel them.

It is said, that the 12th clause of the deed is objectionable for two reasons; *first*, because it gives a preference to two specified creditors; and *second*, because a deed of trust stipulating for releases, must not only convey all the grantor's property, but, convey it equally for the benefit of all; and, in support of these propositions, the case of *Powles, et al., vs. Dilley, et al.*, 9 *Gill*, 222, and the act of 1854, ch. 193, sec. 13, are cited. Neither the case in *9th Gill*, nor the act of Assembly, is sufficient to invalidate this part of the deed. When

speaking of the avoidance of a deed because of a preference, the court refer to the operation of *the insolvent laws.* They say, to render a transfer to a favored creditor void *under the insolvent system,* the debtor must intend *both* to apply for the benefit of the insolvent laws, and intend to prefer the particular creditor or creditors; *the guilty intent must concur in both particulars.* Moreover, that it is incumbent on the complaining party to establish this motive. In the case before us, there is no question touching the insolvent laws; it arises under a deed of trust, and there is no proof of an application for, or intention to apply for the benefit of the insolvent laws. So far from the case cited being an authority against the validity of this clause in the deed, it is an express one in favor of it, declaring, as it does, that the common law has always, in the absence of every badge of fraud, sanctioned the right of one creditor to obtain the payment of his debt from the debtor, to the exclusion of other creditors. The act of 1854, ch. 193, is, as its title declares, *"An act for the relief of insolvent debtors;"* and in *Triebert vs. Burgess, and others,* 11 *Md. Rep.*, 452, it was declared to have no application to a case in which there has been no petition for the benefit of the insolvent laws of the State. In support of this view of the clause in question, several authorities were cited at the bar, but inasmuch as the decisions of our own appellate tribunal are pointed and conclusive, we deem it unnecessary to indulge in any comment upon them.

The 13th clause of the deed is assailed on the ground, that it directs the trustees "to pay in such order and priority, and out of such part of the trust funds, *as by law* they may be entitled to be paid, all such creditors of the parties of the first part, being creditors in any of the co-partnership or individual relations aforesaid, as shall, within sixty days," &c. It is rather difficult to comprehend an argument which rests, for its support, on the ground, that it is *unlawful* to do that which the *law* approves. So far from this provision of the deed being obnoxious to censure, we think it evinces, very clearly, a disposition not to do anything forbidden by the law, and the grantors, in the use of these broad and comprehensive terms, dis-

play a becoming and upright intention to submit, as far as they could do so, all legal questions for the adjudication of the tribunals constituted for that purpose. As to the order of distribution, there ought to be no difficulty. Where priorities have been secured, they will, of course, be respected and enforced, and, for the rest, the law of distribution is pointed out in the cases of *McCulloh vs. Dashiell*, 1 *Harris & Gill*, 106, and *Glenn vs. Gill*, 2 *Md. Rep.*, 15. The deed being one of trust, (although this circumstance does not necessarily oust the jurisdiction of a court of law, 7 *Md. Rep.*, 387,) yet, it enables equity to take cognizance of the matter, and to marshall and distribute the assets.

The 10th clause is claimed to be fatal to the deed, because, by it, the sale is not to be made at once, but the trustees are empowered to make it "whenever they shall think proper and most conducive to the interests of the trust." In support of this objection, the case of the *American Exchange Bank vs. Inloes, Garn. of Turnbull & Co.*, is relied upon. That case was before the court on two occasions, and will be found reported in the 7th and 11th volumes of Maryland Reports. The clause which was there held to be fatal to the deed, was one which expressly empowered the trustee, at his discretion, to sell, "*gradually, in the manner and on the terms in which, in the course of their business Turnbull & Co. had sold and disposed of their merchandize.*" This the court held to be an indefinite postponement of the execution of the trust, and not a mere discretion, which, to some extent, must be confided to the trustee. A reference to the case, as reported in 7 *Md. Rep.*, 390, and 391, will show, that the court did not intend to go any farther than to declare, that the law will not tolerate any hindrance in assignments for the benefit of creditors, "*beyond what may be necessary for the purposes of the trust;*" and also, that it was not its purpose to overrule the case of *Beatty vs. Davis*, 9 *Gill*, 211, or, to deny, on this point, the force of the case of *Macham vs. Stearns*, 9 *Paige.*, 398. When the case came again before the court, (11 *Md. Rep.*, 184,) the following language is employed: "It does not *follow*, from the views we have expressed, in reference to provisions of this kind, that sales

must be always made *immediately* and for cash, whether the
interests of creditors will be affected or not.    *The trustee may
be left to the exercise of a sound discretion,* but the assignment
must not confine him by unreasonable provisions, * * * If
these assignments are fairly and *bona fide* made, the creditors,
if consulted by the trustee, will know best how the trust should
be conducted, and if sales, in any particular manner, will yield
larger results, they will have the best reason for assenting to
that mode.    Thus the creditors can prescribe a law for the
guidance of the trustee, which will fully protect him, and may
accomplish for them what, under the terms of the deed, he
may not be able to effect.    And, where the trustee is appre-
hensive of difficulty, or, for any reason, desires protection in
the performance of his duties, he may invoke the jurisdiction
of a court of equity, and proceed under its direction.''    These
observations relieve this clause of the deed from the objection
urged against it.

Clause No. 16, which provides, that neither the trustees,
nor their representatives, shall be answerable for, or bound to
make good any deterioration or loss that may happen to the
said trust estate, effects and property, unless the same be con-
sequent upon their wilful commission, omission or neglect,
does nothing more than declare what the law ascertains, as the
extent of their liability:  6 *Watts & Sergt.,* 313, and the case
of *Gray, et al., vs. Lynch & McDonald,* 8 *Gill,* 403.

The next, and only question remaining to be considered, re-
lates to the 9th section of the deed, which authorises the
trustees ''one or more attorney or attorneys under them,
for the purpose of executing the trusts herein contained, to
appoint at pleasure and to remove, and such appointment to
revoke and annul.''    This, it is said on behalf of appellants,
is a new and wholly indefensible clause in such a conveyance.
We do not concur in this opinion.    This is not a case to which
the maxim *potestas delegata non potest delegari,* will apply.
Here, the authority to make such appointments is expressly
given, and the only inquiry therefore is, whether the grantors
had the right to confer it?    And we answer it in the words of
the Supreme Court of Pennsylvania, in the case of *Hennessy*

*vs. The Western Bank,* 6 *Watts & Sergt.,* 312: "We see nothing wrong in that part of the deed which, in order to facilitate and hasten the object and purposes of the assignment, gives full power to assignees to appoint and employ, according to their discretion, one or more agents or attorneys under them, with full or limited powers, and the same at pleasure to dismiss and revoke. There is nothing more in this clause, than what is usually contained in every letter of attorney."

From what we have said, it follows, we are of opinion the court below properly rejected the prayer of the plaintiffs.

ECCLESTON, J.—I am of opinion that the deed is void on its face, because it exacts unconditional releases from the creditors of Falconer and Haskell, of all claims against them as individuals and as partners, they being interested in firms of which Kynock was a partner; and the deed not including Kynock's property. This objection is conclusive, and the plaintiffs in this case have a right to make it. This relieves me from passing on the other clauses of the deed, in regard to which I pronounce no opinion.

TUCK, J.—I concur with Judge Eccleston, as to the effect of the clause of the deed exacting releases, and with the other judges in the opinion filed as to its other provisions.

*Judgment affirmed by a divided court.*

(Decided March 11th, 1859.)