BRILEY ET AL. *v.* PINKSTON, TRUSTEE

[No. 94, September Term, 1957.]

(Two Appeals In One Record)

*Decided November 21, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William E. Brooke,* with whom were *Shriver & Brooke* on the brief, for appellants.

*Jack Pinkston,* pro se.

HENDERSON, J., delivered the opinion of the Court.

The parties to these two appeals in one record agree as to only one point, and that is that the controversy involves title to certain funds. On June 12, 1956, the appellee filed a suit (B-368) in the Circuit Court for Prince George's County against William K. Briley and Chancellor Williams, alleging that he was trustee for the benefit of the creditors of Holiday Homes, Inc., under a deed of trust or assignment from that corporation dated March 25, 1955, and recorded in the land records of Prince George's County. The bill alleged that prior to the execution of the assignment on September 2, 1954, the corporation had contracted to build a house for Williams in Charles County, Maryland, for the sum of $5,530.00, and had started but not entirely completed the building at the time of the assignment; that Briley, claiming as a creditor due wages, on May 25, 1955, filed suit in the District of Columbia against the corporation and obtained a writ of attachment before judgment against Williams; that on July 22, 1955, the trustee filed a mechanics' lien against the building, and that Williams compromised and settled the claim by paying to the trustee a balance of $3,180.00, for which he received a receipt and release. At the same time, December 30, 1955, the trustee signed an escrow agreement to hold $1,320.00 (later reduced to $880.00) pending the outcome of the attachment case. The bill tendered this sum to the court, claiming title thereto.

On July 19, 1956, a decree was entered by default against Briley. On August 23, 1956, Briley filed a "motion to quash service and decree", challenging the jurisdiction of the court, and the right to enter a final decree without a decree *pro confesso* and without any evidence presented. Subsequently Briley filed interrogatories and an answer, which were met by motions to strike. Apparently the trial court granted a "rehearing". At some point the case was consolidated with another suit (B-369) which had also been filed by the trustee on June 12, 1956, and which concerned an attachment in the District of Columbia filed November 17, 1955, by another

wage creditor of the corporation, Peikin, seeking to reach the funds due from Williams. The pleadings in this case, however, were somewhat different. The sum of six hundred and sixty dollars was paid into court to cover the Peikin claim, in addition to the $880.00 to cover the Briley claim, in accordance with an escrow agreement. A third suit (B-655), in which the trustee on August 21, 1956, had prayed a restraining order and injunction against further proceedings by Briley in the District of Columbia, was included in the consolidation.

After a hearing of the consolidated cases, the trial court handed down an opinion on January 31, 1957, ruling in favor of the trustee on two questions, whether the deed of trust was void on its face because it permitted a continuation of the business, and whether the trusteeship became effective in view of the failure to file a bond, and denied other motions. On February 26, 1957, the court signed a decree for permanent injunction against Briley, reciting that it had declined, in its opinion filed, to set aside the decree of July 19, 1956. On the same day the court signed a decree for an injunction against Peikin, reciting that in its opinion it had held that the right to the fund is in the trustee, and that title thereto should be vested in him. It appears that in both these decrees the date February 26, 1957, was substituted in ink for the typewritten date January 31, 1957. Appeals to this Court from both decrees were filed on March 28, 1957.

The appellee moved to dismiss these appeals, contending among other things, that they were not taken in time. But on September 20, 1957, we denied the motion. It is clear that under Rule 8 of the Maryland Rules, the appeals were in time, being within thirty days from February 26, 1957, omitting the first day. The fact that the opinion of the trial court was handed down at an earlier date is not controlling. The court did not treat the opinion as a decree, and in fact signed subsequent orders extending the time for transmitting the record to this Court. While in form the decree in the Briley case merely confirmed the decree of July 19, 1956, we think the earlier decree was treated as mistakenly entered, and reopened and reconsidered, so that the only final decree was

the one appealed from. In fact, Judge Fletcher in his opinion referred to it as a "judgment nisi instead of absolute and requiring proof of issues". There is no testimony of this hearing contained in the record, although there is a transcript of testimony taken May 23, 1957, after the appeals to this Court.

The appellants raise eight questions on these appeals, but we find it necessary to consider only the questions of law expressly decided by the trial judge, and certain facts which appear to be undisputed. Holiday Homes, Inc., and Holiday Homes Manufacturing Company, Inc., are Delaware corporations which had offices at 2531 P Street, N. W., in the District of Columbia, prior to March 25, 1955, and employed salesmen who negotiated with prospective purchasers for sales of prefabricated houses. The houses were assembled at a plant in Upper Marlboro and erected on the customers' land pursuant to contract of sale. No houses were ever sold to be erected in the District of Columbia. Almost all of the construction work was performed in Maryland. The payrolls and bank accounts were kept in the District of Columbia. The Williams contract was executed in the District of Columbia, where Williams then resided. The corporations got into financial difficulties, and about March 4, 1955, Mr. Selden, who had been president, treasurer and general manager, disappeared. About the only assets were contracts for unfinished buildings in various stages of completion, on which payment could not be obtained until completion. The deed of trust was executed in the District of Columbia by a former secretary of the corporations on March 25, 1955. It was also signed by an attorney for one of the stockholders, and a list of some 133 creditors was attached. It authorized Pinkston, a resident of Silver Spring, Montgomery County, Maryland, to "take possession of the said estate and property, and without unnecessary delay, to operate the said business so far as to said Trustee seems practicable and otherwise to convert the same into money by the sale of so much as is salable, and collection of so much thereof, as is collectable, and to apply the proceeds, after the payment of the lawful expenses of this trust including a commission of 10 per cent of the gross pro-

ceeds (exclusive of loans or advances) received, for his services according to law in such cases, and after the payment of the wages or salaries due to the clerks, employees or servants of said grantor contracted within three months anterior to the execution of this deed, to the payment in full of the debts due and owing by the said * * *" corporations. The deed was recorded in Prince George's County, but the assignee did not ask the court to assume jurisdiction of the trust. No bond was filed at that time, nor was any bond filed prior to the date of the decrees appealed from. The appellants state in their brief that a bond for $2,500.00 was filed by Pinkston in May, 1957, in connection with another proceeding (B-1571) which is not before us.

We have recognized that there is a common law right to make an assignment for the benefit of creditors. *Tatelbaum v. Pantex Mfg. Corp.,* 204 Md. 360, 371. The general subject is discussed in an article by *Nathanson* in 17 *Md. L. Rev.* 18, where it is said that the filing of a bond simultaneously with the recording of the deed of trust is imperative, in view of the holding in *White v. Pittsburgh Nat. Bank,* 80 Md. 1, that an attachment laid between the date of recording of the assignment and the filing of a bond is valid. It is also said that the practice is to file a petition in the equity court for the assumption of jurisdiction. A notice to creditors is then given. It is also pointed out that Code (1951), Art. 16, sec. 47, gives creditors a right to examine the debtor, in such circumstances. It is the usual practice to have an assignment approved by the Board of Directors.

Code (1951), Art. 16, sec. 275, provides: "Every trustee to whom any estate, real, personal or mixed, shall be limited or conveyed for the benefit of creditors, or to be sold for any other purpose, except upon a contingency, shall file with the clerk of the court in which the deed or instrument creating the trusts may be recorded, a bond in such penalty as the clerk may prescribe, being as nearly as can be ascertained double the amount of the whole trust estate, * * * and no title shall pass to any trustee as aforesaid, until such bond shall be filed and approved as aforesaid, and no sale made by any such trustee without such bond shall be valid or pass any title to

such property or estate. * * * ." Sec. 276 deals with estates which "shall be limited or conveyed to any trustee as security for debt, or to be sold upon a contingency". In such cases the trustee need not file bond "until after the contingency happens, or a sale is about to be made in pursuance of the power contained in the deed or instrument creating the trust, * * * ."

It is the general rule that an assignment for the benefit of creditors is void if it authorizes the trustee to carry on the business for an indefinite period and in the uncontrolled discretion of a trustee of the debtor's own selection. *Jones v. Syer,* 52 Md. 211, 216; *F. H. Roberts Co. v. Hopkins, Inc.,* 6 N. E. 2d 837 (Mass.) ; Note, 23 *A. L. R.* 199. There are cases, however, which recognize that some discretion may be lodged in the trustee, as in the case where partly finished materials are put in marketable condition. Cf. *American Ex. Bank v. Inloes,* 7 Md. 380, 392, and *Maennel v. Murdock,* 13 Md. 163, 179. We express no opinion on the point, since we think it is clear that the failure to file a bond was fatal, so far as the Maryland law is concerned.

The appellee contends, and the trial court found, that the instant case is controlled by sec. 276, rather than by sec. 275. We do not agree. It seems clear that sec. 275 contemplates a liquidation of assets at the earliest date practicable. The exception in the case of a sale upon a contingency is illustrated by *Talbott v. Leatherbury,* 92 Md. 166. There the trustee was directed to hold the property conveyed until the grantor's youngest child should come of age, paying the net income to the children in the meantime, and the trustee was authorized to mortgage or sell the property if necessary. Obviously it would have been a needless expense to require a bond before the incidental power, which seems to have been in the nature of a power to reinvest, was exercised. It was held that no bond need be given until the contingency happened, or unless the beneficiaries demanded it. Cases involving assignments for the benefit of creditors were distinguished. See also *Cummings v. Wildman,* 116 Md. 307, 313. The phrase in sec. 276 as to "security for debt" was inserted just before the decision in *Union Trust Co. v. Ward,* 100 Md. 98. In the

instant case the only contingency contemplated by the conveyance was that there might be some delay in liquidation, because of the nature of the assets. So far as Williams was concerned, the settlement of the trustee's claim against him was not effected until after the attachments had been levied, and more than a year after the assignment. No bond was filed even then. To hold that successive bonds should be filed as each asset was sold would defeat the purpose of the statute, which is remedial and for the protection of creditors, and make the administration of the trust unworkable. We think this is not the kind of contingency contemplated by the exception.

In *Moore v. Title and Trust Co.,* 82 Md. 288, it was held that the Maryland statute requiring the filing of a bond was inapplicable to an assignment for the benefit of creditors made in Pennsylvania by a corporation there incorporated. It was conceded that the deed was valid under the law of Pennsylvania and that the trustee filed a bond there. It was held that title to a *chose in action* in Maryland passed without the recording of the instrument or the filing of a bond here, on the theory that the situs of the personal property was the domicile of the owner. The court distinguished *White v. Pittsburgh Nat. Bank, supra,* on the ground that real estate was there involved. See also *Stiefel v. Barton,* 73 Md. 408, 411, and *Keane v. Chamberlain,* 14 App. D. C. 84, 107. It may be that the claim of the grantor against Williams in the instant case was only a *chose in action,* since title to the material which was attached to the realty passed to Williams, *Dermer v. Faunce,* 191 Md. 495, and it was upon this theory that the mechanics' lien was filed, which resulted in the settlement of the claim. The appellee argues in his brief that the agreement to assign was concluded in Maryland and that this was the *locus contracti.* He also argues that the domicile of Holiday Homes, Inc., was Prince George's County. If that be true, then the Maryland law would clearly apply. But if the assignment was made in the District of Columbia, as the appellants contend, there was no attempt to comply with the law of the District of Columbia. The District of Columbia Code, Title 28, sec. 28-2601 (2:21) and 28-2602 (2:22), require that an inventory under oath be annexed to an assign-

ment for the benefit of creditors, and that "the assignee in every such assignment shall be a resident of the District of Columbia". Pinkston was a resident of Montgomery County. The assignment was not acknowledged or recorded in the District of Columbia. No attempt was made to comply with that law, or with the law of Delaware, where the grantor corporation was incorporated. We think the *Moore* case is clearly distinguishable, and that the Chancellor erred in holding that title to the funds passed under the assignment.

In view of our order granting the appellee's motion to delete portions of the record, we think the costs should be divided.

> *Decrees reversed and bills dismissed, the appellants to pay one-half the costs and the balance to be paid by the appellee.*