THE NATIONAL PARK BANK OF NEW YORK *vs.* THOMAS M. LANAHAN, Trustee. FREDERICK W. BRUNE *vs.* SAME.

*Jurisdiction—Assignment for the benefit of Creditors—Rights of Creditors at Law—Interpleader—Multiplicity of Suits—Complication of Accounts—Trustee—Jurisdiction in Interpleader—Indifferent stakeholder—Attorney and client—Appeal.*

The jurisdiction assumed by a Court of equity upon the application of a trustee under a voluntary assignment for the benefit of credi-

tors, is not an exclusive jurisdiction, and does not interfere with the right of a creditor to proceed by attachment or otherwise, against the property or funds in the hands of the trustee, for the purpose of testing in a Court of law the *bona fides* of the assignment.

The principle on which Courts of equity exercise jurisdiction in cases of interpleader, multiplicity of suits, and complication of accounts, has no application to a case where creditors are prosecuting their legal rights in a Court of law against a fraudulent assignment; and a trustee claiming under such an assignment has no right to the interposition of a Court of equity upon such grounds.

Jurisdiction in interpleader is founded upon a conflict between two or more persons severally claiming the same debt, through separate and different interests, and the person liable to discharge the debt is unable to ascertain which of the claimants is entitled, and he is therefore threatened with two or more suits in respect of a subject-matter in which he claims no interest, and in regard to which he is an indifferent stakeholder.

A trustee who is entitled to commissions on three or four hundred thousand dollars, if the deed of trust be sustained, cannot be said to be an indifferent stakeholder, without any interest in the subject-matter in controversy.

An attorney has no right in his own name, and on his own motion, to appeal from an order or judgment of the Court below affecting the interests of his client.

APPEALS from the Circuit Court of Baltimore City.

On the 16th day of December, 1881, Robert W. L. Rasin, as general partner in the firm of R. W. L. Rasin & Company, of which Edward K. Cooper was recited to be the other and a special partner, executed to the appellee a deed of trust of all the property of said firm, and all his individual estate, for the full and equal benefit of the partnership and his individual creditors, according to their respective rights. The deed was recorded on the day of its execution, and on the next day the trustee duly filed his bond in the Superior Court, according to law. On the 20th of December, 1881, the trustee filed his petition in

the Circuit Court reciting the premises and praying permission to administer the trust under the direction of the Court. On the same day the Court passed an order granting the prayer of the petition, and, in terms authorizing the trustee to administer both the partnership and individual trusts under its direction. On the 19th of December, 1881, Edward K. Cooper, the alleged special partner executed and delivered to Messrs. William F. Porter and Robert A. Dobbin a deed of all his estate for the equal benefit of his creditors. Mr. Porter having declined to act, Mr. Cooper on the 22nd of December, 1881, appointed Mr. J. Swan Frick in his place, and by a confirmatory deed conveyed his estate to Messrs. Dobbin and Frick upon the same trusts. The last named trustees forthwith gave bond according to law, and applied to the Circuit Court for permission to administer their trust under its direction, which was duly granted.

After the order of December 20th, the appellee proceeded in the administration of his trusts, and made large sales of the trust assets, and settlements and adjustments of the business of the insolvent firm with the Court's authority and approval. A certain Robert J. Ruth, who was claimed by some of the creditors to have been a partner in the insolvent firm (but who, as well as the other partners, denied that he was such,) had for the purpose of saving all question, executed to the appellee, on the 24th of January, 1882, in conjunction with the said R. W. L. Rasin and R. W. L. Rasin & Company, a deed confirming in all respects, the original deed of trust of the 16th of December, 1881. Mr. Lanahan, thereupon, on the 1st of February, 1882, in conjunction with the said Ruth and the said Rasin (the latter interposing in his individual capacity as well as for the firm and as its acting partner,) filed a petition under oath in the Circuit Court wherein the execution of the confirmatory deed of the 24th of January, 1882, and the filing of a new bond thereunder by the

480 MARYLAND REPORTS.

National Park Bank *vs.* Lanahan, Trustee. Brune *vs.* Same.

trustee were recited, copies of the respective documents being filed as exhibits. The petitioners united in praying the Court to authorize and direct the trustee to administer the trust under its direction, authority and control, and that he be directed to give the usual notice to creditors to file their claims with the clerk. On the said 1st of February, 1882, the Court passed the order prayed, and in terms assumed "jurisdiction of the trust estate and property referred to in said petition as therein prayed." The notice to creditors was duly published, and a large number filed their claims in pursuance of it.

On the 11th of February, 1882, Mr. Cooper executed and delivered to the appellee a confirmatory deed in which, after reciting that he was absent from the city, when the original deed of trust of the 16th of December, 1881, was executed by Rasin, as acting partner, he ratified and confirmed the said deed and all that had been done in the premises. Mr. Cooper had already on the 27th of January, 1882, executed another confirmatory deed to Messrs. Dobbin and Frick, in which he recited his previous deed to those gentlemen and referring to the fact that he was charged with having made himself responsible as a general partner of the firm of R. W. L. Rasin & Co., (which he denied,) and that his deeds to his said trustees were claimed to be defective, by reason of their not providing for the payment of his liabilities as such general partner (if in fact he had incurred such,) he declared that his said deeds should be taken and construed as making his assets liable, in due course of law and equity, for such partnership liabilities, if any, after paying his individual debts, and that no part of the fund should be payable to him until all his debts and liabilities of all sorts should be first provided for.

On the 13th of February, 1882, a certain W. George Weld and Alexander J. Wedderburn, at the instigation and request of certain of the attaching creditors in this

case, filed their petitions in the Court of Common Pleas in insolvency, against the said Rasin and Cooper, praying to have them declared insolvents. The petitioners claimed to be creditors of each of the said insolvents and of the firm of R. W. L. Rasin & Co., and alleged, among other things, that the various trust deeds heretofore mentioned had been executed by said insolvents, with intent to delay, hinder and defraud their creditors, both individual and partnership. The answers of Rasin and Cooper set up the proceedings already had in the Circuit Court, in respect to the trust property, under the deeds of trust impeached, and relied on the assumption and exercise of jurisdiction by that Court over the same.

Meantime, the administration of the trust estate by Mr. Lanahan, under the direction of the Circuit Court, was carried on, by sale and other disposition of the trust property, real and personal. On the 20th of January, 1882, he reported sales of partnership property to the amount of $260,000, which were duly ratified. Upon the realty which constituted a part of the property so sold, there were mechanics' liens to the amount of over $55,000, for the enforcement of which proceedings had been instituted in the Circuit Court for Anne Arundel County, and which after litigation, were compromised by the trustee under the Court's direction. Other sales and transactions of large amounts were likewise made under the same direction, and reported and confirmed. Large demands against the insolvent partnership were compromised and settled, and accounts were stated by the auditor under the direction of the Court. Contracts entered into by the insolvent firm for the manufacture and delivery of fertilizers were carried out by the trustee, and the crude materials among the assets were used for that purpose, under the direction of the Court.

Pendings these proceedings in the Circuit Court, certain of the creditors of Rasin and R. W. L. Rasin & Company,

brought suit against them in the various common law Courts of the city and the Circuit Court of the United States, which were prosecuted, regularly, to judgment. The earliest of these judgments was rendered on the 13th of February, 1882, in the Superior Court of Baltimore City, and an attachment thereon was laid in the hands of the appellee on the 15th of February, 1882. The judgments in favor of John W. Anderson, assignee, were rendered the 4th of April and the 6th of July, 1882, respectively, and the attachments thereupon were laid in the hands of the appellee on the 7th of April and 7th of July, 1882, respectively. These proceedings were in the Circuit Court of the United States. The judgment in favor of the appellant, The National Park Bank of New York, was rendered on the 6th of July, 1882, in the United States Circuit Court, and the attachment thereon was laid in the appellee's hands on the 7th of July, 1882.

On the 11th of December, 1882, the trustee filed the petition which is the foundation of the present controversy. It affirmed that the original deed of trust, of itself, and *a fortiori* after its ratification and confirmation by Cooper, was a valid and lawful conveyance of the assets which it professed to convey, and by reason thereof, and of the equal distribution among creditors, which it prescribed, was entitled to the favorable consideration of the Court, and furnished a lawful and competent foundation for the jurisdiction which the Court had assumed and was exercising. The petition claimed that after the Court had assumed jurisdiction and control over the trust assets, and had ordered notice to be given to creditors to file their claims, no creditor was at liberty to proceed at law for the purpose of obtaining a preference, and no judgment obtained or attachment issued under such proceeding could create any lien or establish a priority over other creditors. It then averred that all the judgments and attachments before referred to [of which a list was filed with the peti-

tion,] and all the suits under which they were obtained and issued, were for the express purpose of creating and securing such unlawful priorities and were an unwarrantable interference with the Court's jurisdiction and would oust and defeat the same, and ought to be enjoined and restrained. The petition further charged that even if there were any ground for impeaching the validity of the deed of trust, (which it denied,) it was competent for the judgment and attaching creditors, by proper intervention in the trust proceedings, to raise all such questions, and was within the competency and jurisdiction of the Circuit Court to decide them, and pass upon and adjudicate, according to their priority, all liens and preferences, if any, acquired by said creditors through their proceeding at law. The petition also charged that by reason of the jurisdiction long before assumed by the Circuit Court over the trust property and the administration of the trust, and by virtue of the dealings of the Court, and of the trustee, under its orders, with the trust and assets, and the fact that the property and its proceeds, so far as sold, were, to all legal intent, in the Court's custody, the Circuit Court was the proper and the only proper tribunal for the assertions of the liens and priorities sought to be obtained by the attaching creditors. The petitioner further claimed, that inasmuch as these creditors had already done everything at law to fix their priorities, if any, and the order thereof, leaving nothing undetermined but their right, if any, to condemn in the hands of the petitioner, the assets over which the Court had taken jurisdiction and which the petitioner had administered and was administering under its orders, it was their duty and they should be compelled by the Court to desist from proceeding further at law and to assert before the Court, in the trust proceeding, any further claims or pretensions which they might set up against the trust fund. The petitioner accordingly prayed on his own behalf and as trustee and on

behalf of his *cestuis que trust*, the creditors who had come in, under his notice for an equal distribution of the fund, that the Court would enjoin the judgment and attaching creditors from proceeding further at law, and compel them to assert any further rights they might have or claim, in the trust proceeding.

The petition further represented that if the attaching creditors were permitted to go on with their attachments, the trial of which they were urging, and were successful in them, the whole of the trust estate might be consumed, and must be greatly wasted by multiplication of costs, to the entire exclusion of the creditors whose claims were filed in the trust proceedings; that the trustee must be put to great labor, responsibility and expense in defending a multiplicity of suits, without the protection of the Court in the matters in which he had acted under its authority. On the other hand, he charged that the creditors who had filed their claims under the order and invitation of the Court, and the creditors and others to whom he had made sale and transfer of the trust assets by its direction, were urging him in their turn, to proceed with the administration of the trust; consummate the engagements which he had entered into under the Court's orders; and made distribution of the trust funds thereunder. The trustee, therefore, claimed that in his position and relation as an official of the Court, acting under its orders in good faith and bound thereby, it was his privilege and duty to ask the intervention of the Court and its protection against these conflicting and antagonistic demands and proceedings. He accordingly prayed to be held harmless and unmolested in the premises, and that the judgment and attaching creditors be compelled to come into Court in the trust proceedings, and interplead therein, the said last-named creditors to be enjoined, meanwhile, from proceeding further in their suits at law against the petitioner, and from interfering, by or through any legal process,

with him or the property and assets under administration in the Court.

The petitioner further charged that by the terms of the deed of trust to himself and the like deed of Cooper to his trustees, the obligation was imposed to pay the surplus of individual property over individual debts to the partnership creditors, and *vice versa*, in each case. The petition also proceeded to show that no ascertainment could be had of the amounts and relations of the said respective funds and of the rights of the respective trustees as between themselves or in their relation to creditors of both classes, without such a statement and settlement of the partnership accounts and of the individual estates of the parties as could only be had in a Court of equity.

The petition charged and insisted in view of the facts, that in every aspect of the case and the litigation and proceedings referred to, there was a complication of interests and relations between parties, and of accounts between the respective estates involved, which Courts of law were wholly incapable of dealing with. Finally the petitioner averred as follows, viz., "Petitioner further represents, that the trustees of said Cooper, under the deeds hereinbefore mentioned, have sought the direction of this Court in the administration of their trust, and that jurisdiction and control over the same and over the trust assets have been assumed by the Court, and the said trusts are now being conducted under its direction, notice to creditors has been duly given by said trustees in conformity with its order, all of which will appear by said proceedings in this Court pending. It being apparent, as petitioner insists, from the facts thus and hereinbefore set forth, that an accounting between your petitioner and said trustees, and between the estates which they respectively represent, is indispensable to the settlement of said estates, and the proper distribution of their assets, and to the ascertainment and determination of the rights of the creditors of

said estates, of all classes, and the disposition of their claims, whether to priority or equal distribution ; your petitioner represents that a consolidation of the said proceedings had on the application of said trustees with those had in this case, will conduce largely to the convenient adjustment of all the rights and questions so as aforesaid at issue and in controversy."  *   *   *

The petitioner then prayed consolidation of the trust proceedings in Cooper's case with those in which the petition was filed, and that proper accountings be had of the assets, claims and liabilities of the insolvent firm and each of the partners, and of the claims and demands of Rasin and Cooper against and their liabilities to each other, and to their individual creditors respectively, &c., &c., and that the respective assets of the firm and its partners be distributed by the Court among the individual and partnership creditors, according to their respective rights under the several deeds of trust.   It then further prayed as follows:   " And that the said judgment and attachment creditors may be required and compelled to set up and prosecute in these proceedings, all and singular their respective claims against the said partnership, and against the said partners in their partnership and individual capacities, and against the assets and property of said partnership and said partners, and against your petitioner and the trustees aforesaid of said Cooper, respectively, and against the assets in the hands of your petitioner, under the jurisdiction and control of your Honor in these proceedings, as well as against the assets of said Cooper, under administration in this Court as aforesaid.

"And that the attaching and judgment creditors may be compelled to interplead in these proceedings with the creditors, who have filed their claims to and for an equal distribution under your Honor's order therein, and to assert and prosecute against said last named creditors before your Honor, in these proceedings, such rights and

APRIL TERM, 1883.          487

National Park Bank *vs.* Lanahan, Trustee.   Brune *vs.* Same.

demands, if any, as they may lawfully have, or claim to have, to liens or preferences or remedy of any sort, over or in exclusion of said last named creditors, so that the same, and all other questions as to the trust estate of R. W. L. Rasin & Company, and R. W. L. Rasin, individually, here under administration, and between said judgment and attachment creditors and this petitioner, and between said creditors and those who have come into the case, in respect thereto, may be fully and finally heard and determined in this Court and these proceedings, and that equity and justice may be done in the premises.

"And that pending such interpleader and adjudication thereunder, the said judgment and attachment creditors, and each of them, may be restrained and enjoined from proceeding further at law under their said judgments, or upon their said attachments, or by any legal proceeding or process whatsoever, against this petitioner, or the assets and property, or any part thereof, which were of R. W. L. Rasin & Company, or of Robert W. L. Rasin individually, on the 16th day of December, 1881, and over which this Court has taken jurisdiction, and which your petitioner is administering in these proceedings under its direction."

Process was then prayed against all the judgment and attaching creditors, with publication against non-residents, also *subpœna* to Rasin and Cooper and to the trustees of Cooper.  The injunction was prayed in these words: "May it please your Honor, to grant to this petitioner the writ of injunction, to the judgment and attaching creditors aforementioned directed, that is to say, to the Third National Bank of Baltimore," &c., &c., &c., &c., "and each of them, enjoining and restraining them, and each of them, their respective agents and attorneys, and all persons acting for them, from suing out any process or instituting any proceedings whatever at law, and from proceeding further in any action by them, or either of them,

heretofore instituted at law, or under any judgment by them, or either of them, at law recovered, or under any attachment or other process or proceeding whatsoever, by them heretofore sued out against Robert W. L. Rasin and Edward K. Cooper, as copartners, lately trading under the firm name of R. W. L. Rasin & Company, or Robert W. L. Rasin individually, or Robert W. L. Rasin, trading as R. W. L. Rasin & Company, against or to affect in whole or in part, or in any way, the assets and property which were of said firm, or of said R. W. L. Rasin, on the 16th day of December, 1881, and now are in the hands or under the control of said Thomas M. Lanahan, by or through the deed of trust of the last mentioned date hereinbefore referred to, and are in course of administration by him, as trustee thereunder in this Court in these proceedings, until the further order of this Court."

The preliminary injunction was granted as prayed on the 11th of December, 1882, in the usual form, with leave to the defendants to move for a dissolution on filing their answers and giving five days' notice.  None of the attaching defendants answered except Coates, who admitted the facts and the validity of the trust deeds, and assented to the prayer of the petition.  R. W. L. Rasin answered, admitting the allegations of the petition, and assenting to and joining in its prayer for relief.  He also set up the insolvent proceedings, against himself and Cooper as additional ground for such relief.  Frederick W. Brune, Esq., one of the counsel of The National Park Bank of New York, and of John W. Anderson, assignee, two of the judgment and attaching creditors, filed a petition in his own name, as "an attorney and counsellor of the Circuit Court of the United States for the Fourth Circuit in and for the Maryland District," in which he charged that by the service of the injunction upon him (his clients being non-residents,) an illegal attempt had been made to restrain him as an attorney and counsellor of the United

States Court, and through him his clients, from asserting their just rights. He claimed, that it was not competent for the Circuit Court of Baltimore City, by injunction, to restrain the Circuit Court of the United States, or its officers, attorneys or suitors from prosecuting their lawful remedies in cases within the Federal jurisdiction. He further claimed, that a Court of equity was not competent to restrain proceedings at law even in a State Court, where that Court had already lawfully acquired jurisdiction and was competent to administer justice. He insisted that the proceedings in the equity Court being founded on the theory of the validity of the trust deed, and the proceedings at law being founded on the theory of its invalidity, the two proceedings did not conflict with each other, and the prior action of the equity Court was, therefore, no such assumption of jurisdiction as ousted that of the law Courts. After stating his views and arguing them, Mr. Brune suggested to the Court, that inasmuch as his clients could not be made parties to the equity proceeding, and as their appearance and answer might prejudice their rights by making them appear to recognize a jurisdiction erroneously assumed, he submitted that they be not required to answer before the hearing of a motion to dissolve, and he, therefore, filed a motion to that effect, himself, without answering further. The Cecil National Bank of Port Deposit, a suitor in the Superior Court of Baltimore City and an attaching creditor, likewise filed a motion to dissolve. After full argument, the Court on the 24th of March, 1882, overruled the motions to dissolve, and continued the injunction. The respondents Anderson, Pinckney and the National Marine Bank are not parties to these appeals.

After the passage of the decree the National Park Bank of New York, on the 29th of March, 1883, filed its answer, and on the same day the Cecil National Bank also answered. On the 31st of March, 1883, both of the banks

named appealed from the order granting, and the order
continuing, the injunction.   On the same day, Mr. Brune
appealed from the order of December 11th, 1882, *grant-
ing an injunction against Anderson,* and also from the
order of the 24th of March, 1883, overruling and dismiss-
ing his own motion.

The causes were argued before MILLER, STONE, ROBIN-
SON, and IRVING, J.

*Frederick W. Brune,* and *Stewart Brown,* for the ap-
pellants.

The *ex parte* proceedings on the part of the appellee
formed no proper basis for the issue of an injunction, and
the equity Court had no right or sufficient reason to issue
such injunction to protect its authority or dignity, for these
were not assailed.   If there had been any conflict between
the different tribunals of law and equity, the law Court
had first acquired jurisdiction of the real controversy,
viz., the validity of the deeds, and should have been
allowed, on every principle, to decide the question.   But
there was no conflict.   The cases confirm this view, and
sustain the appellants' contention in every particular.
*American Exchange Bank vs. Inloes,* 7 *Md.,* 387 ; *Keigh-
ler vs. Ward,* 8 *Md.,* 266 ; *Laupheimer vs. Rosenbaum, et
al.,* 25 *Md.,* 220 ; *Lynch vs. Roberts,* 57 *Md.,* 154.

It is a doctrine which has never been questioned, that a
creditor, with grounds for assailing a fraudulent deed, or
going after the property of his debtor, whether on the
ground that the property taken possession of by the
trustee was not contained in the deed, (and this is one
contention here,) or on any other ground, had certain rights ;
one of these was that he might levy upon such property
not covered by the deed ; another, that he might treat the
deed as a nullity and levy on the property conveyed by
the deed ; another, that he could elect the forum in which

to try his case, either proceeding in equity for the common benefit, or in the race of diligence securing a preference, if fortunate enough to do so, by obtaining a lien by judgment and attachment.

Another equally well settled doctrine is that the grantee, under a fraudulent conveyance, had no rights that Court or creditors were bound to respect.

Yet the contention here is, that the trustee, by hiding the proceeds of the fraud in a Court of equity, whether conveyed by the deeds or not, has so far involved the power and dignity of the Court, and engaged it on his side, that he has not only secured to himself the right of election really belonging to the creditor, but has deprived him of the most personal of his rights, viz., the seizure of property unconveyed by the deed to which the trustee has no color of legal right, or of obtaining a lien or preference.

The point is distinctly made in Lanahan's petition, that the acquisition of such liens is unlawful—"an unwarrantable interference with the equity Court's jurisdiction." What is the meaning of the specious offer in another part of the petition, inviting the creditors to present their claims and pretensions, *if any,* in this case, for adjudication?

The doctrine mainly, if not exclusively, relied on by the trustee, and by the Court below, to justify the proceeding by injunction, is, that the fund is actually in *custodia legis,* and, therefore, protected from the attack of creditors assailing the deeds, and, therefore, it becomes the right and duty of the Court to protect the *trustee* who submits himself to its control, and to interfere for the preservation of its authority and dignity.

The cases already quoted in 7, 8 and 25 *Md.,* determine that this doctrine of *custodia legis* does not apply to proceedings of this *ex parte* character, or, indeed, to any proceedings, even *inter partes,* in which the deeds are not assailed, even in a case where it is conceded that the deed

in question covers the entire property attacked by the creditor at law.

Looking at what the Court had actually done by way of assuming jurisdiction, we note, on the face of the proceeding:

That this professes to be taken only under certain deeds, and, therefore, can only affect property *conveyed* by said deeds. If these deeds were fraudulent, then, as to creditors, *no property* was conveyed. Of what *in such case* has the Court jurisdiction? The basis of the jurisdiction falls, for there are no trusts to administer.

Suppose, however, that some of the property in the trustee's hands *was not conveyed by the deeds*, can it be said that such property is rightfully in the Court of equity or subject to its protection? The deeds, on their face, only profess to deal with and convey the property of a *special partnership*, and are made upon trusts to pay debts of the *special partnership* alone. And one of the contentions of the appellants here is that the whole of the property held by Lanahan, which he is attempting to administer in equity, belonged to the *general partnership*, and is liable to creditors of the general partnership. *No property of the general partnership is conveyed.* Yet, the trustee has it.

Can the Court rightfully assume jurisdiction over such property, or protect the trustee as to it? Yet this is the effect of the injunction, and it was so intended.

As to such property not actually conveyed by the deeds, the trustee himself could at any time withdraw it from Court, on the allegation that it was never rightfully there, and formed no part of the trust fund, and there is no right in the Court to protect such property. All jurisdiction as to it is wrongfully assumed.

Again the Court took such jurisdiction as it did assume in the *ex parte* case, solely on the allegation of the trustee that the deeds had conveyed certain property, and on the

assumption that they were valid.   These assumptions and allegations the creditors propose in the proper Court, and, when properly raised, to controvert and to show that they are not true.   If our contention is sustained, then it is the trustee who has imposed on the Court, and not the creditors; and it is against him, and not against them, that its dignity and authority should be vindicated.

There is, however, no occasion for the equity Court to be jealous for its dignity or authority, by reason of the action of other Courts as to this fund.

If, where the equity Court was actually administering an estate in a suit *inter partes,* a party litigant in that suit should assign to a stranger to the proceeding his share of the fund, *pendente lite,* would not the equity Court cheerfully recognize such assignment and assist the assignee and indeed protect him, if necessary, in getting his share of the fund?   This is an every day occurrence. If so in the case of a voluntary assignment, what difference can there be in the case of an *involuntary statutory assignment, by judgment and attachment,* from a Court competent to act and decide on the rights of parties, particularly where the equity Court has not undertaken to decide on such rights?   There is no more interference with the equity Court in the one case than in the other, and in neither case is its honor or authority involved. *Early, &c. vs. Dorsett, &c.,* 45 *Md.,* 468-9.

It is clear that the *ex parte* proceedings, from their very nature, are insufficient to give the Court such jurisdiction as would justify the Court in exercising its extraordinary and delicate powers to restrain suitors at law.   If this be so, then the doctrine applies that the law Courts had first taken cognizance and jurisdiction of the contest, over the validity of the deeds; but looking at the *new proceeding,* by bill, or petition by itself, or as grafted on the old proceeding, to see if either or both combined present a case and disclose any equity which, under any well received

rule of law or practice, calls for or justifies such interference by the Court, we find that these proceedings, with all their allegations, and taken with all reasonable intendments, do not furnish one of the many requirements considered necessary before suits at law can be enjoined, for—

This is not a creditor's bill, it is brought by the trustee representing only those claiming under the deeds and under him.

This is no proper proceeding to attack the deeds or raise the question of their validity.

For no allegation is made by the trustee that they are invalid; it would be strange indeed for him to make such allegation.

There are no proper parties made; no class of creditors represented by one; no decree for one, which might be considered a decree for all.

There is no decree, upon proper application by a proper party, *after setting aside the deeds,* declaring the ulterior purpose of the Court to take and hold the property for the equal benefit of all, but saving all liens and rights acquired down to such decree. In fact, there has been no decree at all, in any proper sense, or as to the questions really litigated.

Certainly there has been no proceeding offering to a creditor, as against the deeds, the same full rights which he had in any other proceeding; and manifestly, no decree such as in *Ellicott vs. U. S. Insurance Co.*, 7 *Gill*, 319, is declared to be essential. There the rule obtained from *Rankin vs. Harwood*, 2 *Phillip's Cases*, 22, is thus stated and applied to an insolvent corporation.

"The Court will not restrain a creditor from prosecuting his legal remedy against the personal representative of his debtor, *unless there is a decree* under which the creditor has a present right to go in and prove his debt."

That is to say, in a case like ours, not an invitation to prove his debt under the deeds, and affirm the deeds, but

a right to prove according to his rights and contentions over the deeds and against the deeds, and we add as that case discloses with a recognition of such legal priority as the creditor has acquired before decree, even *pendente lite.*

Applying any of the tests recognized in the books, the proceeding before us is shown to be wanting; but the last is the crucial test and ought to settle the question. 3 *Daniel's Chan. Prac.* 1718; *Laupheimer vs. Rosenbaum, et al.,* 25 *Md.,* 230; *Rhodes & Williams vs. Amsinck & Co.,* 38 *Md.,* 355, 356.

Adverting to some of the questions of interest disclosed by the record, to show the substantial character of the controversy over the deeds, we find that the creditors charge,

1. That the deeds were made with the *actual* intent to hinder and delay and defraud creditors.

2. That the deed of the 16th December, 1881, executed by one partner only (Rasin), was defective and ineffectual to convey partnership property, and this defect is apparent on its face.

Now the creditors expressly deny that any emergency existed rendering it necessary for Rasin alone to execute said deed, and also expressly charge that said Cooper refused to confirm or acquiesce in said deed until he had put it out of his power to do so by having conveyed away all his property, individual and co-partnership, and that the deeds themselves show that he was continuously in Baltimore, making deeds and confirmatory deeds, beginning on the 19th of December, 1881, and to different trustees.

3. That the deeds contain false and fraudulent statements as to the relations of the partners, introduced with fraudulent intent, and necessarily having the effect of hindering and confusing and delaying creditors.

4. That the attempt to make out Cooper a special partner, when they both well knew that he was not, as to the larger part of the assets, was to attempt to create a fraud-

496 MARYLAND REPORTS.

National Park Bank *vs.* Lanahan, Trustee. Brune *vs.* Same.

ulent and improper preference in favor of Cooper, and Cooper's individual creditors and endorsees, against and out of the partnership fund of the general partnership; and that such statements had, and were intended to have, the effect of shielding him from attack as a general partner.

5. That the deeds themselves, one and all of them, expressly, on their face, deal exclusively with the property of an alleged special partnership; and are upon trusts for the benefit of such special partnership alone; and that they are ineffectual to convey or affect property of the general partnership; and do not secure the creditors of such general partnership.

It is particularly to be noticed here that the contention is not that there was a special partnership in which Cooper, the special partner, by his actions, had made himself liable to specific creditors as a general partner, but the allegation is that there were or had been *two partnerships* between the same persons, Rasin & Cooper, one a special partnership, which had expired by limitation and never been renewed, which might have both property and creditors entitled to its assets, and a general partnership carried on between these same two partners, which had its large assets, and of which the appellant, the National Park Bank, was a creditor.

These constitute in law and in fact two distinct entities or artificial persons, and any dealing with the funds, assets or creditors of the one, the special partnership, as these deeds profess to do, can have no effect upon the assets or creditors of the other, the general partnership. The assets of the latter have never been conveyed at all, yet they are in the trustee's hands. They are not only open to attack in his hands, but any transfer of them to him by said debtors is a fraud in law.

6. These deeds have required too much confirmation to be valid in law. Such confirmations only throw well-grounded suspicion upon the original deeds, *and are of no*

*effect to remedy defects.* The conveyances must stand or fall, as originally made, the property then having passed out of grantors, except as to creditors. *Gable, Trustee vs. Williams, &c.,* 59 *Md.,* 54.

These and kindred questions the creditors propose to raise, and have tried.

The doctrine of equity jurisdiction being taken to prevent multiplicity of suits does not apply to a case like this. No case can be found where it has been asserted on the application of a trustee claiming under deeds attacked for fraud, and certainly none where, at the instance of such trustee, creditors have been enjoined on that ground.

This is no case for interpleader, for here is no case of a mere stakeholder with no interest in the fund, and fund claimed in different rights by different parties *against whom he has no defence at law.* 2 *Daniel's Ch. Prac.,* 1661.

On the contrary, the judgment-creditors, in their attachments, assert their claims at once against the trustee and against all creditors assenting to and claiming under the deeds. These latter claiming only through, (not against,) the trustee, are effectually concluded by any judgment of condemnation against the trustee; while, on the other hand, if the deeds are valid, trustee and creditors alike through him have a full defence at law. He is already fully protected against both sets of creditors as well at law as in equity. As trustee, he has an interest in the property, and claims title adverse to one set of litigants and in favor of the other. The very petition itself sets up the pretensions of the one set and denies the right of the other.

Nor are the judgment-creditors in any way concerned in or affected by the state of accounts and the claims of the respective partners, Rasin & Cooper, *inter sese,* or as between their respective individual creditors.

As creditors of the general partnership they have a claim under their judgments against both partners; and if

their contention is sustained, by their executions they have acquired a lien as well upon the individual property of both partners as upon and against the partnership effects, and they cannot be made to wait on the settlement of the rights of the partners *inter sese.*

If we are correct in our views the equity Court had no right to issue an injunction, even against proceedings in a State Court. But, in this case, the Court took a further step and enjoined non-resident suitors in the United States Circuit Court, and again, as its process was ineffectual against such non-residents, carried its will into effect, by preventing an attorney, and officer of that Court, from exercising his professional rights and duties in said suits, thus directly affecting him personally, although he is not made a party to the proceeding, and, although no allegation is made against him. The State Court had no right to enjoin suitors in a Federal tribunal, or to affect, by process, to that end, an officer of such Court. This position is sustained by an unbroken current of authorities from an early period of our national history. 2 *Story's Equity, sec.* 900; *Diggs vs. Walcott,* 4 *Cranch Sup. Ct. R.,* 179; *McKim vs. Voorhees,* 7 *Cranch Sup. Ct. R.,* 279; *Duncan vs. Darst,* 1 *Howard,* 301; *Peck vs. Jenness,* 7 *Howard,* 625; *Riggs vs. Johnson Co.,* 6 *Wallace,* 166; *U. S. vs. Keokuk,* 6 *Wallace,* 514; *Kendall vs. Windsor,* 6 *R. I.,* 453; *Meade vs. Merritt,* 2 *Paige,* 402; *Schuyler vs. Pellissier,* 3 *Edw. Ch.,* 191; *Phelan vs. Smith,* 8 *Cal.,* 520; *Carter vs. Griswold,* 4 *Edward's Ch.,* 377; 2 *Leading Cases in Equity,* 1402.

Mr. Brune, the attorney and officer of the United States Court, so injuriously affected in his personal rights and professional duties, although not named as a party to the suit, and no allegation made against him, became an unwilling actor in these proceedings, applied in his own person, in the only mode open to him, by respectful petition, praying that as to him the said injunction should be

dissolved, setting forth what he had done for his clients, and, in fact, setting forth the facts which were not controverted, and which could not be controverted, because sustained by the record, but which, even if not so proved on such hearing of his petition, must be assumed to be true. The Court conceded his right to a hearing on his petition, but dismissed the petition. No allegation had been made against him, calling for an answer. He was not a defendant, and, therefore, could not answer, and, therefore, the technical statutory rule which Judge LEGRAND called senseless and absurd, viz., that a defendant must answer before appeal, but that the Court could not on appeal look at the answer filed, did not apply to him. He was an actor in the case by petition, and the action of the Court as to him, whatever it may be as to others, is final. The enjoining process is continued and effectual on him, and unless he is entitled to his appeal, he is remediless, although this honorable Court should determine that the petition of the trustee is bad on demurrer, and that the injunction was on the face of the proceedings improvidently issued.

*Thomas M. Lanahan, Severn Teackle Wallis,* and *I. Nevett Steele,* for the appellee.

It was suggested in argument below, and the point is taken in some of the papers filed by some of the defendants, by way of motion to dissolve, that even if the appellee was entitled to his injunction, he should have prayed it by original bill and not by petition in the trust proceeding, which is designated as *ex parte,* simply because it originated in an *ex parte* application to the Court.

If the appellee is entitled at all to the relief which the Court granted him below, it is plainly by reason of the pendency of the trust proceedings; the dealings of the trustee therein with the trust property, under the order of the Court; and the jurisdiction so practically and extensively exercised by the Court over the trust estate, prior

500          MARYLAND ·REPORTS.

National Park Bank *vs.* Lanahan, Trustee.   Brune *vs.* Same.

to as well as after the laying of the attachments in his hands. These reasons and the appearance of both creditors and purchasers, by special petitions in the trust proceeding, as well as the coming in of creditors under the publication directed by the Court, and the responsibilities assumed and imposed upon the trustee by the orders of the Court—together with the pendency of contracts as to the trust assets made by the Court through the trustee—all these things, rendered it not only proper but necessary for the trustee to ask, in the same proceeding through which and under which he held the funds, the protection of the Court against interference with them. If he had filed a new and separate bill, he would have had to make all the parties to the trust proceedings parties thereto, and to file the record of the trust proceeding as part of his case. Not only was it not necessary for him to do this, but if he had done it, his bill would have been dismissed and he would have been remitted to the trust proceeding. 1 *High on Inj.*, sec. 55 ; *Hammond vs. Hammond*, 2 *Bland*, 360 ; *Boyd vs. Harris*, 1 *Md. Ch. Rep.*, 469 ; *Laupheimer vs. Rosenbaum*, 25 *Md.*, 219, 229, 230 ; *Codwise vs. Gelston*, 10 *Johns.*, 521 ; *Wiswall vs. Sampson*, 14 *Howard*, 65, 66 ; *Howard vs. Selden*, 4 *Hughes C. C. Rep.*, 510-11 ; *Bispham's Prin. of Equity*, sec. 414.

It is difficult indeed to perceive the force of the suggestion, that a trustee, entrusted with trust funds by a Court of equity and administering them under its direction, in a proceeding for that purpose, ought to go out of that proceeding and institute another in the same Court, in order to protect the funds in the first proceeding from interference or spoliation. The case in which the jurisdiction is invaded or threatened is the case in which to vindicate it.

*Interpleader.*—It was said by the learned Judge below, that if the trustee had applied to him for relief upon the sole ground of the multiplicity of suits and demands insti-

APRIL TERM, 1883. 501

National Park Bank *vs.* Lanahan, Trustee. Brune *vs.* Same.

tuted or threatened against him while attempting *bona fide* to administer his trust, such application, in itself, would have sufficed to justify the relief prayed and to require the parties complained of to come in and assert their claims in the Circuit Court. Not only is the trustee exposed to condemnations in attachment, which may affect his liability as well as divert the trust funds in his hands, but he is under the pressure of general creditors who have come in, at his invitation, for equal distribution, and he is liable to purchasers with whom he has contracted and to whom he has parted with and delivered a large portion of the assets which it is proposed to condemn, and in respect to which a personal liability may be fixed on him by condemnation. It is hardly necessary to say that creditors, coming in upon notice issued by a Court of equity, become parties to the proceedings into which they are invited, by simply filing their claims without even the need of a petition. *Williamson vs. Wilson,* 1 *Bland,* 430; *Welch vs. Stewart,* 2 *Bland,* 41; *Strike vs. McDonald,* 2 *H. & G.,* 239; *McDonald vs. Goldsmith,* 6 *Md.,* 319; *S. C.,* 24 *Md.,* 214.

In view of all the interpositions of creditors and purchasers as shown by the record, it would seem that a case could with difficulty be presented, in which justice to the trustee and a regard to the principles upon which interpleader proceedings rest, could more imperatively demand the application of that mode of relief.

The doctrine of interpleader is too familiar for much illustration by reference to cases. It is stated, perhaps as well as anywhere, by the author, in *Hilliard on Injunctions, p.* 246, *sec.* 44, where he quotes and relies on the language of Lord LOUGHBOROUGH, in *Langston vs. Boylston,* 2 *Vesey, Jr.,* 108. See also *Bispham's Prin. of Equity, sec.* 424; 2 *Story's Equity, secs.* 807, 808. And, as to bills in the nature of bills of interpleader, see 2 *Story's Equity, sec.* 824.

Indeed, so far is the form of the antagonistic claims, or the mode of procedure for enforcing them, from being

material, that it is held to be unnecessary that the conflicting suits shall have been actually commenced, at all, against the stakeholder, either at law or in equity.   *"It is sufficient that a claim is made against him, and that he is in danger of being molested by conflicting rights."*   2 *Story's Equity,* sec. 808.

Nor does the fact that the conflicting claims are sought to be enforced in Courts of different jurisdictions obstruct at all the right of Courts of equity to give relief in interpleader cases.   Whatever hesitation there may be, on the part of the equity Courts, to interfere in such cases, is matter of comity only, whether the case arises upon proceedings instituted in the Courts of the United States, or in those of other States.   *Bispham's Prin. of Equity,* sec. 424; *Home Ins. vs. Howell,* 9 *C. E. Greene, N. J.,* 239.

The question still is, whether the party is vexed—not whether he is vexed in this Court or that.   It is against the conflicting claimants that equity protects the stakeholder, and not against the Courts in which they sue.   Its process is against the individual and not the tribunal, and it would be strangely inconsistent, to hold that a party may be enjoined from suing, when he only threatens suit, and may, nevertheless, protect himself against injunction, by bringing the identical suit threatened, in the very jurisdiction in which he threatened to bring it.

*Multiplicity of Suits.*—The right of the appellee to the relief prayed in his petition, on account of the multiplicity of the suits by which he is vexed and the fund is impaired, is, to a considerable extent, involved in the question of interpleader just presented.   As a separate and substantive ground of relief, however, it is believed to be of conclusive effect in the case.   The doctrine of equity on the subject is laid down by all the authorities to be: that where there is one general right set up, which is common to many, whether it be claimed by one against many or by the many against the one, equity will interfere and

itself determine the right, in order to prevent vexatious litigation and multiplicity of actions. 1 *High on Injunctions, sec,* 61 ; *Kerr on Injunctions,* 2 *Am. Edit. (ch.* xx,) *p.* 523.

And this doctrine is recognized as applicable to numerous attachments, quite as much as to any other form of multiplied proceeding, Courts of chancery regarding it as proper to enjoin their prosecution, in order that the rights and priorities of all parties may be determined in one proceeding in equity. *Balline vs. Ferst,* 55 *Ga.,* 546 ; 2 *High on Injunctions, sec.* 1406.

Indeed, it would be difficult to suggest any reason why any one form of suit should be less within the operation of the principle than any other, the ground of equitable interference being the multiplicity and not the form of the actions, and the grievance being the same, in whatever form or forms the actions may be multiplied. In the present case, the one general claim, common to all the creditors attaching on judgments, is that the deed of trust is invalid and does not preclude individual creditors from pursuing the trust assets, and gaining priority and complete satisfaction out of them. The contention of the creditors claiming in the trust proceedings, is that the deed is valid, securing equality of distribution and excluding preference. The only difference between or among the attaching creditors is as to the priority of their respective liens, if they have acquired any. These priorities, if any, the petition does not ask the Court to disturb, but, on the contrary, leaves and prays the Court to administer them, if already acquired, claiming and assuming that the Court has ample power and jurisdiction to determine whether they have been acquired or not, so as that priorities can be founded upon them. The petitioner accordingly invokes the jurisdiction and interference of the Court to bring in the numerous plaintiffs at law, and compel them to set up their general claim in the one proceeding already pending in

equity, instead of the twenty proceedings which they are urging at law. And this, it is respectfully submitted, is precisely what the received doctrine of equity in the premises requires and sanctions.

*Consolidation and accounting.*—The manifest necessity of consolidating the trust proceedings in this case with those in the Cooper trust, and taking an account in each, and between the two estates, furnished grounds for an injunction. Some of the attachments are laid in the hands of Mr. Lanahan simply, in order to cover partnership property as well as the individual estate of Rasin; some of them are laid in his hands as garnishee of Rasin, some as garnishee of Rasin and Cooper as partners; some as garnishee of R. W. L. Rasin & Co. without naming the partners. How the amounts to be severally condemned (if there should be condemnation), under these different garnishments against different estates, can be ascertained at law and settled and adjusted, as between twenty attachments wholly disconnected and pending in four different Courts and two jurisdictions, is not perceived.

The accounting, of which a Court of equity alone is capable, is absolutely indispensable, not merely for the protection of the garnishee, but to fix amounts as between the attaching creditors themselves, if they succeed, to say nothing of preventing the encroachments of individual creditors upon the partnership fund and *vice versa.*

1. *As to the rights, between Courts of concurrent jurisdiction, growing out of jurisdiction first acquired.*— That the trust proceeding, in the Circuit Court, as matter of fact, was prior in date to all of the attachments, is of course not in dispute. The first petition of the appellee was filed and jurisdiction was assumed by the Circuit Court on the 20th of December, 1881, and not only was the first attachment not laid in the appellee's hands until the 15th of February following, as has already been shown, but no one of the suits in which judgments were obtained

against the insolvents was even instituted prior to the 5th of January, 1882. No one of the appellants (assuming Anderson to be represented by Mr. Brune), had even taken steps to convert its claim against the insolvents into a judgment, until after the Circuit Court was in full possession and control of the trust estate, under the Code, and only Anderson (and he ineffectually), had sought to do so, before the second petition was filed, and the Court had passed its order, on the prayer of Rasin as well as the trustee, under date of February 1st, 1882, again asserting its jurisdiction and directing creditors to be called in.

That, as between Courts of concurrent jurisdiction, that which first assumes jurisdiction over the subject-matter is entitled to retain it and will restrain the institution or prosecution of suits, in other Courts, touching the same subject-matter, is, as a general proposition, too well established for controversy. *Snyder vs. Snyder,* 1 *Md. Ch. Dec.,* 295; *Withers vs. Denmead,* 22 *Md.,* 145.

And the fact that the question arises as between the Courts of the United States and of the States does not in any way affect this rule. *Riggs vs. Johnson County,* 6 *Wall.,* 196; *French vs. Hay,* 22 *Wall.,* 250, 253; *Home Insurance Co. vs. Howell,* 9 *C. E. Green,* 238; 1 *High on Injunctions, secs.* 108 *to* 111; *Clark's Case,* 4 *Benedict,* 88, 96 *to* 98; *Andrews vs. Smith,* 19 *Blatch.,* 102. Where a proceeding has been instituted in equity for the administration of assets under the direction of the Court, and where a decree has been passed assuming such administration and affording creditors an opportunity to prove their claims, it is well established that the Court will restrain any creditor from seeking a separate remedy to obtain priority at law. *Bispham's Prin. of Equity, sec.* 414; *Ellicott vs. U. S. Insurance Co.,* 7 *Gill,* 307, 319; *Rhodes vs. Amsinck,* 38 *Md.,* 344, 355, 356.

There are two things, only, requisite as a foundation for the exercise of the restraining power of equity in the last cited class of cases, viz.,

1st. That equity, by its decree, shall have taken jurisdiction over the fund, for the benefit of creditors.

2d. That by its decree it shall have tendered to creditors a present right to come in and file their claims.

If these conditions exist, the form of the proceeding from which they have sprung is absolutely immaterial.

2. *The right of the Circuit Court to protect itself and its officer.*—Whatever may be said as to the priority of jurisdiction in the Circuit Court and its right to retain exclusive control over the subject-matter, there can, it is believed, be no successful question of the right of that Court to exercise its restrictive jurisdiction, for the protection of its officer and the fund in its hands and under its administration.   To that question the cases in 7 and 8 *Md.* have no relation or application whatever.   They affect only the enquiry whether the prior assumption of the trust draws all jurisdiction to the forum assuming it, and whether the mere pendency of such prior proceeding precludes other concurrent Courts, where there is no injunction, from acting for themselves.   The question now under consideration is, whether the Court so administering will permit suitors in other Courts to invade its jurisdiction and take possession of the funds in its custody.   The one is a mere question of priority and of subject-matter as between Courts of concurrent jurisdiction.   The other involves the independence of all Courts and their power of self-protection.   The distinction is sharply and plainly drawn in *Andrews vs. Smith,* 19 *Blatchford,* 102.   "*It is the interference with the possession of another Court which would ensue, that prevents taking jurisdiction in that class of cases, and the pendency of the same identical controversy in another Court of concurrent jurisdiction, which prevents it in the other.*"

A decree or order of a Court of chancery, assuming jurisdiction or control of a fund, "virtually takes possession of the property and vests it in the Court for the purpose

of distribution." *Hammond vs. Hammond,* 2 *Bland,* 360. And in this state of the case, no Court has laid down more broadly and vigorously than this, the doctrine upon which the appellee here relies. *Cockey vs. Leister,* 12 *Md.,* 124. See also *Farmers' Bank vs. Beaston,* 7 *Gill,* 421; *Bentley vs. Shrieve,* 4 *Md. Chy. Dec.,* 412; *Glenn vs. Gill,* 2 *Md.,* 18; *Withers vs. Denmead,* 22 *Md.,* 135; *County Commissioners vs. Clark,* 36 *Md.,* 219; *Gould vs. Mayor,* 58 *Md.,* 42; *Peale vs. Phipps,* 14 *Howard,* 368; *Wiswall vs. Sampson,* 14 *Howard,* 63, 65-67; *Buck vs. Colbath,* 3 *Wallace,* 341.

The appeal of Mr. Brune should be dismissed, as he has no personal interest whatever in the matter in dispute, and is in nowise personally affected by the orders appealed from. The injunction was served upon him as attorney, pending the publication ordered against his clients as non-residents, and while such service precluded his clients from proceeding (2 *High on Injunctions, sec.* 1440,) and would have exposed him to proceedings for contempt if he had disregarded the injunction (*Idem, sec.* 1441) it did not make him a party to the suit or entitle him to litigate, on his own motion and in his own name, what his clients only had the right to contest or were interested in litigating. One of Mr. Brune's clients, the Park Bank of New York, has answered and appealed in its own name, Mr. Brune and his associate filing its answer and praying its appeal as its solicitors. The other, Mr. Anderson, filed no answer, but Mr. Brune appeals, notwithstanding, not only from the granting of the injunction against Anderson, who has not answered or appealed, but from the granting of the order enjoining the Park Bank, which has both answered and appealed in its own right and behalf. Clearly Mr. Brune had and has no standing in either Court, but if he had, and was entitled to appeal below as a *quasi* party and move to dissolve, and is entitled in any event to appeal from the dismissal of his motion, he was bound, as

National Park Bank *vs.* Lanahan, Trustee.   Brune *vs.* Same.

"the party appealing," to file his answer, before he could lawfully appeal under the statute.   *Revised Code, Art. 71, sec.* 41.

ROBINSON, J., delivered the opinion of the Court.

In this case the general and special partners of the firm of R. W. L. Rasin & Company, by a voluntary assignment, conveyed all the partnership property, and all their individual estate, in trust for the payment of creditors.

The deed of R. W. L. Rasin as general and acting partner, was executed on the 16th of December, 1881, and on the 20th of December, Lanahan, trustee, therein named, filed a petition in the Circuit Court of Baltimore City, praying permission to administer his trust under the direction of the Court, and on the same day an order was passed granting the prayer of the petitioner.   Afterwards an order of like import was passed upon the petition of Rasin and Ruth, assignors.   Lanahan, trustee, accordingly proceeded under the direction of the Court, in the administration of his trust, made large sales of the trust property, completed contracts entered into by the firm for the manufacture of commercial fertilizers, and compromised and settled certain litigated claims against the trust estate.

Under the notice directed by the Court, some of the creditors of R. W. L. Rasin, and of R. W. L. Rasin & Co., filed their claims for distribution; other creditors, however, insisting that the several assignments already referred to, were *fraudulent and void,* brought suits against Rasin individually, and also against the firm, in the several common law Courts of Baltimore City, and in the Circuit Court of the United States, which were regularly prosecuted to judgment.   Upon these judgments, attachments were issued and laid in the hands of Lanahan, trustee.

Pending these proceedings, a petition was filed by the trustee, out of which this controversy has arisen.   After

reciting at much greater length and detail the matters already stated, the petitioner alleges that the Circuit Court had assumed jurisdiction over the trust estate—had directed creditors to file their claims—that the trustee had actively proceeded in the administration of his trusts under the direction of the Court, and that by such dealings on the part of the Court and of the trustee under its orders, the entire trust property was in *the custody of said Court.*

He further alleges, that certain creditors of Rasin and of Rasin & Co., had brought suits in the common law Courts of Baltimore City, and in the Circuit Court of the United States, and had prosecuted the same to judgments, —that upon the judgments thus obtained, attachments had been issued and laid in the hands of the petitioner— that if the attaching creditors are permitted to go on with their attachments, the trust estate must be greatly wasted by multiplication of costs, and the trustee put to great labor and expense in defending a multiplicity of suits, without the protection of the Court, in the matters in which he has acted under its authority—that owing to the complication of accounts between the general and special partners, no ascertainment can be had of the rights of the respective trustees as between themselves, or in their relation to the individual and partnership creditors, except in a Court of equity.   The petitioner therefore prays that the attaching creditors may be compelled to come into Court in the trust proceeding *and interplead therein,* and that they may *be enjoined by injunction* from proceeding further in their suits *at law* against the petitioner, or the property now under the administration of the Court.

The question really presented by the petition and answers of the attaching creditors, is whether the jurisdiction assumed by a Court of equity upon the *ex parte* application of the trustee and his assignors in the administration of the trusts, created by a voluntary assignment for

the benefit of creditors, is an *exclusive jurisdiction*, and thereby deprives creditors, who insist that it is fraudulent and void, from proceeding *at law* by attachment or otherwise, against the property if unsold, or against the fund in the hands of the trustee?

Were this a question of first impression, to be decided purely on principle, we do not see on what just grounds such a jurisdiction can be maintained. A debtor in failing or embarrassed circumstances may, it is true, convey all his property in trust for the payment of creditors. The objections which at first blush suggest themselves, on the ground that such conveyances must necessarily to some extent *hinder and delay* creditors, are upon further consideration answered by the fact, that the debtor has in good faith dedicated all his property of every kind to the payment of his debts; and in cases especially where no preference is given, this is all the creditors have any right to expect, and all the law ought to exact. To such assignments, however, the creditors are not parties, and they may therefore refuse to come in and participate in the distribution of the fund, and still rely upon the individual responsibility of the debtor. The assignment must however be *bona fide* and made in good faith. If fraudulent it confers no rights against creditors. Fraud vitiates everything, and the question of fraud is one which may be tried in a Court of law as well as in equity. For obvious reasons, the creditor may prefer the question shall be tried and determined at law, because if the deed be fraudulent, he thereby acquires a *lien on the property* or a *priority in the distribution of the fund,* whereas a proceeding in equity would enure to the common benefit of all the creditors. But irrespective altogether of this, it is a right which belongs to the creditor, and of which he cannot be deprived by the mere *ex parte* application of the trustee and his assignors to a Court of equity. They have no right to select the forum in which the question of fraud *vel non,* shall be determined.

The argument against the right of the attaching cred-
itors to proceed *at law* rests mainly on the ground, that a
Court of equity has in fact assumed jurisdiction over the
property and trusts created by the assignments. But
how did the Court acquire such jurisdiction? By the
mere *ex parte* application of the trustee and his assignors,
and to which the attaching creditors are in no sense parties.
Now if the argument be sound, all that is necessary to de-
prive Courts of law of jurisdiction in cases of fraudulent
assignments, and creditors of the right to have the ques-
tion of fraud tried in such Courts, is for the trustee imme-
diately upon the execution of the assignment, to file a
petition in equity praying permission to administer a trust
created by the voluntary act of an insolvent debtor. No
case has been cited in support of this position, and the de-
cisions in this State are all against it. In the *American
Exchange Bank vs. Inloes, Garnishee of Turnbull & Co.*,
7 *Md.*, 380, the question presented in this appeal was
fully considered and decided by the Court. In that case,
Turnbull & Co. made an assignment of all their property
in trust for payment of creditors. The deed was executed
on the 22d of September, 1851, and on the 17th of March,
1852, a Court of equity upon the petition of the trustee
assumed jurisdiction over the trusts created by the assign-
ment, and gave notice to creditors to file their claims.
Afterwards, one of the creditors of Turnbull & Co., refus-
ing to assent to the assignment, and insisting that it was
fraudulent and void, brought suit against the firm, and
prosecuted it to judgment. Upon this judgment, attach-
ment was issued, and laid in the hands of the trustee, as
garnishee. In that case, as in this, it was argued, that
the Act of 1845, chapter 166, requiring the trustee, in all
deeds of assignment for the benefit of creditors, to file a
bond in the clerk's office, *in itself conferred jurisdiction
on a Court of equity,* to administer the trust; and secondly,
independent of the provisions of this Act, the Court had

upon the petition of the trustee assumed jurisdiction over the trusts created by the assignment, and that the fund thus being under the control of a Court of equity, could not be attached.

In delivering the opinion of the Court, Judge MASON said :

" The objection raised by the appellees to the present proceeding, namely that the Court having assumed jurisdiction over the subject, has thereby ousted the Court of law of the jurisdiction it now seeks to exercise, cannot be sustained. The equity proceeding which has been set up as a bar to the present action, does not propose to assail the deed of trust, but on the contrary rests upon the assumption that the deed of trust is valid, and was intended merely to invoke the aid of a Court of equity to carry out and enforce the trusts contemplated by said deed. The present proceeding is based upon the assumption namely that the deed is null and void. The objects therefore of the two proceedings being entirely opposite in their character and purposes cannot be said to conflict with each other. And further to this chancery proceeding, the plaintiffs in this action were no parties, and therefore they should not be bound by it, even if it had contemplated in its range the exigencies of their case."

This case was followed by *Keighler, et al. vs. Ward*, 8 *Md.*, 254, where the appellants having obtained a decree in the Court of Chancery against Royston Betts, filed their petition in said Court praying for a *writ of sequestration* to enforce the payment of the decree. To this petition Ward appeared and filed his answer setting up a deed of trust from Betts to him for the benefit of creditors, and filed also his report as trustee thereunder in the Superior Court of Baltimore City, exhibiting a full account of his trust, and the residue in his hands for distribution. The Chancellor passed an order quashing the writ so far as it affected the trust estate in the hands of Ward, trustee.

National Park Bank *vs.* Lanahan, Trustee. Brune *vs.* Same.

The argument in this Court against the right to issue the writ of sequestration, because the Superior Court had exclusive *jurisdiction over the trust property*, was answered, said Judge MASON, by the decision in the *American Exchange Bank vs. Inloes*, 7 *Md.*, 380. "It is true," say the Court, "that a jurisdiction once rightfully asserted by a Court of equity, and which would lead to a settlement of all the questions which might arise out of the subject-matter in controversy, will exclude all jurisdiction over it by other Courts for similar purposes, and the reason of this, which is to prevent a number of conflicting proceedings, is wise and just. But that a proceeding like this one pending in the Superior Court, which contemplated giving force and efficacy to a deed, can be said to draw within its ample folds the consideration of questions which assail the very existence of the deed itself, is a proposition not for one moment to be entertained."

The principle which lies at the bottom of these cases is simply this, a voluntary assignment for the benefit of creditors may *be fraudulent*, or it may be *bona fide*. If fraudulent, it confers no rights as against creditors assailing it. Courts of law have jurisdiction in questions of fraud, and it is not in the power of the debtor nor of his trustee by their own act to deprive a creditor of the right to have the question of fraud *vel non*, tried and determined in a Court of law. That the jurisdiction assumed by a Court of equity, upon the application of a trustee, in the administration of the trusts in pursuance of the terms of the assigment, is a jurisdiction assumed upon an *ex parte* proceeding to which the creditors are in no manner parties and based upon the *validity of the assignment*. The proceedings by the non-assenting creditors on the other hand are based upon the *assumption that the assignment* is *fraudulent and void*, and the property attempted to be conveyed is still liable to seizure and sale for the payment of their claims.

But whatever may be the reasons on which the cases we have cited are founded, they decide beyond question, that the jurisdiction assumed by a Court of equity upon the application of a trustee under a voluntary assignment for the benefit of creditors, is not an *exclusive* jurisdiction, and does not interfere with the right of a creditor to proceed by attachment or otherwise, against the property or funds in the hands of the trustee, for the purpose of testing in a Court of law the *bona fides* of the assignment.

There is nothing in this case, to take it out of the operation of this well settled rule. The principle on which Courts of equity exercise jurisdiction in cases of *interpleader, and multiplicity of suits, and complication of accounts* has no application to a case like this, where creditors are prosecuting their legal rights, in a Court of law, against a fraudulent assignment; and a trustee claiming under such an assignment has no right to the interposition of a Court of equity upon such grounds. And besides this, the trustee Lanahan is in no position to call upon the attaching creditors to interplead in a chancery proceeding instituted by himself. Jurisdiction in *interpleader* is founded upon a conflict between two or more persons severally claiming the same debt, through separate and different interests, and the person liable to discharge the debt, is unable to ascertain which of the claimants is entitled, and he is therefore threatened with two or more suits in respect of a subject-matter in which he claims no interest, and in regard to which, he is an indifferent stakeholder. In this case, the trustee who is entitled to *commissions on three or four hundred thousand* dollars, if the assignment be sustained, cannot be said to be an indifferent stakeholder, without any interest in the subject-matter in controversry. In any aspect, therefore, in which this case may be viewed, we are of opinion the Court below had no power to grant the injunction prayed, and the order grant-

ing the same must be reversed, and the injunction dissolved.

> *Order reversed,*
> *injunction dissolved, and*
> *petition dismissed.*

The appeal of Mr. Brune was disposed of as follows, Judge ROBINSON delivering the opinion of the Court:

An attorney has no right in his own name and on his own motion to appeal from an order or judgment of the Court below affecting the interests of his client.

The appeal, therefore, in this case by the appellant, who was merely the attorney for Anderson in the attachment proceedings, must be dismissed.

> *Appeal dismissed.*

(Decided 21st June, 1883.)